MONCURB},' P.
-The pláihtiff in error was .convicted diT'an 'indictment charging 'him with''having unlawfully, bu't not felo-niously, killed and-destroyed á dbg, the property'of another; and the question is, whether a dog: is property tvithin the'meafling of the Code; .ch; 192, § S3, 'p.' 79'6; oh‘which the indictment ;was founded?
That' section, so'far as it is material to be stated, declares that íf a person “unlawfully,' but' not” feloniously, take and carry away ‘or destroy; deface or injure any '*propérty, real' or personal1, not his ovin',. he shall, be deemed guilty of a ' misdemeanor. ’ ’
It wa}s well settled at' common law that while; ' on the one hand, a dog is such property ' as that' its owner .may maintain á civil action for the unlawful conversion, .destruction or injury thereof by another " person, it” is not such property as ' to be subject of larceny. And this distinction in regard to' the nature of this siibjec{ has ne.ver been altered by statute, but continues still to prevail, notwithstanding the reason for the distinction has long since ceased. It belongs to the legislature and not to the courts to abolish the distinction, if it be proper to do. so.
Now the' question is, In which sense was the word “property” used in the statute above mentioned; in the sense of the word in' regard to the dffence of larceny, or in its sense in regard to a civil action as aforesaid?
If the question were res integra, it would not be entirely free from doubt. Por while, on the one hand, the general word property is used in the statute without, any restriction, and is broad enough to embrace, literally, .every thing which can be the subject of ownership for any purpose; and while every such thing seems to..come, as well ■within the reason as the meaning of the statute,.-yet, on .the other hand, it must he remembered that. this is a penal statute, *475 and ought therefore to be construed strictly, so that if the word “property” has one sense in the criminal law and another in the civil law, it may with some reason be argued, that the word, when used in a penal statute, should be construed in the former sense, in the absence of anything to the contrary in the statute. The peculiar language of this statute seems to support this view. “If a person unlawfully,' but not feloniously, take and carry away any property,” &c. The legislature seems here to have contemplated only an act which *would be felony if it were done felo-niously. The statute, in describing the offence, defines larceny, / with the exception of the felonious intent, which is expressly excluded. It often happened at common law that on a trial for larceny, though'it was proved that the accused unlawfully took and carried away and converted to his own use the goods and chattels of another, yet he was acquitted, because the act was not done “feloniously,” 'or cum animo furandi. It was one of the objects of the statute to make the act a misdemeanor, though not done “feloniously.” To be sure the statute embraces injuries which could hot be the subject of larceny at common law, and to which the wofd “felo-niously” cannot apply, such as to injuries to real property, &c. These were injuries which came within the mischief designed to be prevented by the statute, and they were therefore embraced in its terms. Some of them were made the "subjects of larceny by thé Code, ch. Í92, $ 17, p. 789, which declares that “things which savor' of the realty, and are, at the time they áre taken, part of the freehold, ‘Whether they be of the substance or produce thereof, or affixed thereto, shall be deemed goods and chattels of which larceny may be committed, although there be no interval between the severing and taking away.”
But I regard the question involved in this case as, im’effect, adjudicated. The section in the Code on which the indictment is founded was derived from the act of 1822-3, ch. 34, '$ 1, Sess. Acts, p. 36, and is the same in substance therewith, so far as concerns this case. The only difference is in the phraseology of the two sections ; that of the act of ,1822-3 being full and diffuse in the enumeration of subjects, besides containing the general words ‘ ‘any other property, real or personal,” while the section in the Code contains only the general words “any property,, real or personal. ” Of course I am now confining *my remarks to so much only of the two sections as relates to the present inquiry. A comparison of the two sections will, I think, satisfy the mind that the purpose of the framers of the Code was to make no change in the meaning of the former law, but merely to prune it of the' superfluous words with which it abounded. That the same construction ought to be put upon the Code as upon the former law in this respect, is shown by the case of Paramore v. Taylor, 11 Gratt. 220, and the cases there referred to. I think we may safely say that the same words, “property, real or personal,” which occur in each of the two sections, have the same meaning in' each, and embrace the same, and only the same, subjects. Now these words were construed by the General Court in Maclin’s Case, 3 Deigh 809, in which it was held that the act of 1822-3, ch. 34, § 1, did not authorize a criminal prosecution for killing dogs belonging to another. There were then on the bench nineteen of the twenty ' judges that composed that court, all of them men of great eminence and learning in the legal profession. Twelve of them concurred in the decision, and the remaining seven dissented. There seems to have been some difference among the judges composing the majority, upon a question which was ¡mooted in the case; but they all concurred in the opinion that a criminal prosecution cannot be sustained for’1 the destruction of dogs. “By the'cominon law,” said Deigh, J., in pronouncing the opinion of the majority, “the property in dogs and other inferior animals is not such as that a larceny cán be committed by stealing them, though the possessor has a base property in them, and may maintain a civil actioh for injuries done to them. ' Arid in a penal act, like the one now under consideration,' the word ‘property, ’standing alone, Ought to be considered to mean full and complete property, such'as, by the common law, may be protected by a public prosecution for the larceny thereof.”
*1 am not prepared to sayi and am not called On to say,' whether I would have 'concurred'‘with the majority or the minority had I been'a'member of the court when that cáse was decided. Much could have been'said on each side, as I have already noticed. But I think the rule stare decisis now applies, and that Maclin’s Case governs this. That decision was made not only by great judges, but by 'the highest court of appeal in criminal cases at that time in the state. It is'therefore of binding authority. It was made in July, 1831, more than thirty-five years ago, and has never since been questioned in any case; but on the contrary has continued to stand side by side with the statute as the correct exposition thereof. The legislature has acquiesced in, and it seems been satisfied With, this construction, and has never made any change, which could so easily have been done if it had been desired, in this respect. The words, ‘ ‘a dog shall be deemed property in the meaning of the criminal law,” would have accomplished the purpose. The revision of 1849 was a very fit occasion for the change had it been desired, but no such change was then made; and ever since, section S3, of chap. 192, as it was then enacted, has stood unchanged in the Code. I think it is now too late to overrule that case. To overrule it now, after it has been, as it were, so long engráfted in the Code, would be like making ah ex post facto law, and punishing a person for an act which was no legal offence when it was *476 committed. When the act, which is the subject of the present prosecution, was committed, the accused had every reason to believe that the act was not a criminal offence. The act may have been a great moral offence, and there may be the strongest reasons for making such an act a legal offence also. We may well imagine cases in which to steal or kill a person’s dog would inflict upon him a great injury, and be an outrage which ought to be punished in the *most exemplary manner. A person may own a dog so valuable as to be a safeguard to his dwelling-house, and the dog may be killed by a wrong-doer for the purpose of getting to the house to commit a burglary. Everybody will say that such an act would deserve very severe punishment; but nobody will say that it ought to be punished by a judicial tribunal without any law making the act punishable. These are considerations which address themselves forcibly to the legislative department, but cannot be entertained by judges. When the legislature makes an act penal which before was not, the law has only a prospective operation, and to.attempt to give it a retrospective operation would be to make it unconstitutional as being an ex post facto law. When a court overrules a former decision upon the construction of a law, the later decision has, to some extent, the effect of an ex post facto law. And this consideration makes-the rule stare decisis apply with increased force to decisions upon the construction of penal laws.
I do not mean to say we are concluded by a prior decision of our highest appellate court in any case. We have power to overrule it, and ordinarily it is our duty to do so if we consider the decision erroneous. But for the sake of consistency and certainty in the law, we ought not to do so in a doubtful case, even though we may incline to think the decision erroneous; and the authority of a decision is greatly increased, by lapse of time and public acquiescence. Sometimes it acquires almost the force of law by becoming a canon of property, or a settled rule of construction of a penal' ‘statute, or by being tacitly sanctioned by th,e legislature. It is on the two last named grounds,'and especially the last, that I attribute so much weight to the decision in Maclin’s Case. The very same words in the very same law which had been construed in that case, were adopted without change *by the legislature in the revision of the Criminal Code in 1847-8, and of the whole Code in 1848-9, and we ought to consider them as adopted according to that construction. 'When the legislature adopts a statute of another state, the presumption is that it intends also to adopt the construction previously put upon such statute by the highest appellate court of that state. And a fortiori when the legislature revises the whole Code of our own state and embodies in the new Code a former statute, substantially in the same words, the construction previously put upon those words by our highest appellate court may be considered as the meaning in which they were intended to be used in the new Code. We must presume that the legislature, engaged in such a work, and aided by revisors selected on account of their legal learning and experience, was at least cognizant of the decisions of our-own appellate .'court upon the construction of our statute law. In this view of the subject, which beems to me to be sound, I do not think that I have given too much weight to the decision in Maclin’s Case.
I have been referred to several cases decided in other states which have a bearing upon the question I have been considering, and some of which perhaps would lead to a different result from that to which I have come. Those cases are The State v. McDuffie, 34 New Hamp. R. 523; Findlay v. Bear, 8 Serg. & Rawle’s R. 571; The State v. Latham, 13 Ired. Law R. 33; The People v. Maloney, 1 Parker’s Crim. R. 593; and United States v. Gideon, 1 Minnes. R. 292. The views of the court in the last named case strongly support the case in 3 Beigh, while those of the court in the first named case are as strongly the other way. But whatever may be the effect of these decisions in the states in which they were pronounced, they can bear no comparison in this state with a decision of our own highest appellate court, which is of binding authority with us.
*1 am therefore of opinion that the judgment of the Circuit court ought to be reversed and a judgment entered for the plaintiff in error non obstante veredicto. But under the circumstances I do not think there ought to be a judgment for costs against the prosecutor, either in this court or the Circuit court.