# CHARLESTON.

RUSSELL V. CARTER *et al.* v. RESERVE GAS CO. *et al.*

Submitted October 7, 1919.   Decided October 14, 1919.

1. STATUTES—*Modification of Rule in Shelley's Case Strictly Construed.*

   Being in derogation of the common law, sec. 11 of ch. 71 of the Code, modifying the Rule in Shelley's Case, is limited in its operation to cases falling within its terms as well as its purpose, under the rule of strict construction.   (p. 745).

2. DEEDS—*Vesting Estate for Life with Remainder to Heirs Within Modification of Rule in Shelley's Case.*

   A deed upon a valuable consideration, vesting an estate in any person for his life and after his death in his heirs, or the heirs of his body, is within the terms as well as the purpose of said statute.   (p. 745).

3. SAME—*Words in Deed Words of Limitation Vesting Fee-Simple Estate in Grantees.*

   Words in a deed from a father to two of his sons, purporting to create remainders in fee in their heirs, after life estates vested in them, with a provision that, on the death of either of the sons, the other shall have a life estate in the whole of the land, are words of limitation, vesting fee simple estates in the sons.   (p. 745).

4. SAME—*Breach of Condition Subsequent Gives Right of Forfeiture without Re-entry.*

   On the failure of the grantee in a deed from a father to a son, conveying to the latter land for life, with a remainder in fee to his heirs, to perform a condition subsequent, requiring him comfortably to support, maintain, attend and care for the grantor and his wife on the land, a right of forfeiture of the entire title accrues to the grantor, which he may enforce without re-entry, he being in possession, and his title may be quieted and cleared by a reconveyance to him by the grantee, by way of rescission, and, in such case, the remainder falls with the life estate.   (p. 750).

5. SAME—*On Breach of Condition Subsequent Neither Clause of Re-Entry nor one of Forfeiture Necessary.*

   Neither a clause of re-entry nor one of forfeiture in such a deed is essential to the right of re-acquisition of the title by forfeiture for non-performance of the condition.   (p. 750).

6. SAME—*Creating Life Estate in Grantee with Remainder in Fee-Simple to His Heirs.*

A conveyance of land to a person "to be held and enjoyed by said party during his life, and at his death to descend to his heirs," creates a life estate in such person and a remainder in fee simple in his heirs, by virtue of sec. 11 of ch. 71 of the Code; the words "to descend" appearing by their context to have been used in their popular sense and to mean the same as the words "to go." (p. 750).

Appeal from Circuit Court, Harrison County.

Suit by Russell V. Carter and wife against the Reserve Gas Company to cancel an oil and gas lease, etc., with answer by defendant Gas Company averring title in itself, Harrison W. Carter and wife, and Cynthia Morrison. Decree dismissing the original and the three amended end supplemental bills and retaining the cross-bills of Harrison W. Carter and the Reserve Gas Company for treatment as original bills, and further procedure thereon, and Russell V. Carter appeals.

*Reeversed, demurrer overruled, remanded.*

*Smith & Jackson,* for appellant.

*Wm. H. Taylor,* and *Hoffheimer & Templeman,* for appellees Morrison and others.

*Law & McCue,* for appellees Harrison W. Carter and others.

POFFENBARGER, JUDGE:

The decree appealed from in this cause was made and entered in a suit brought by Russell V. Carter and wife, for cancellation of an oil and gas lease on a tract of land described as containing 100 acres, more or less, executed to the defendant, the Reserve Gas Company, by H. W. Carter and others, March 30, 1909, and for an accounting for the gas taken from said tract of land by the lessee. That company filed an answer in which it denied the plaintiff's alleged claim of title to the tract of land, beyond an estate therein for the life of Harrison W. Carter, one of its lessors, and avers title in itself, Harrison W. Carter, Sarah J. Carter, wife of Harrison, and Cynthia Morrison, to an estate in the remainder in fee simple therein, as to the oil and gas. The

answer also sets up a lease of the land for oil and gas pur-.
poses to the respondent, executed by the plaintiffs themselves.,
This answer and the original and three amended and sup-.
plemental bills, with their exhibits, developed a state of facts.
under which the court entered a decree dismissing all of the·
bills, but retaining the cross-bills of Harrison W. Carter·
and the Reserve Gas Company, for treatment as original bills.'
and further procedure thereon.

Geo. F. Carter, grandfather of Russell V. Carter, father·
of Harrison W. Carter, and the grandfather of the other de-.
fendants, except the Reserve Gas Company and the wife of·
Harrison W. Carter, reposing more confidence in the business:
capacity of two of his sons than was due them, executed
three deeds in each of which he provided for a life estate·
and a remainder in fee. Deeming himself to have re-acquir-
ed what he conveyed by the first, he executed the second;.
and, supposing himself to have re-acquired what was convey-
ed by it, he executed a third under which the plaintiffs claim.,
The theories of the defense are that he never re-acquired the·
remainders created by the first deed, and, that if he did, the·
one created by the second never came back to him. By the first·
deed, dated, April 5, 1856, he and his wife conveyed the land
to George J. Carter and Harrison W. Carter, his sons, ini
this way: "To have and To Hold the lands as long as they
the said parties of the second part shall live with a remain-
der to their heirs forever, and in case of the death of either
of the said parties of the second part, said land shall be
vested in the other of said parties during his life, with re-
mainder as aforesaid." A part of the consideration for this
conveyance was the agreement of the grantees to pay to Til-
ton T. Carter, the youngest son of the grantor, $600.00, on his
attaining the age of twenty-one years, if he should live to that
age. In case of his death under that age, they were relieved
from this obligation. The deed also reserved to the grantor
and his wife a life estate in the land. Tilton T. Carter
having attained the age of twenty-one years, and George J.
Carter having left the state, without payment of any portion
of the $600.00, the grantor instituted a suit in equity against
George J. Carter, in which such proceedings were had that

the latter's interest in the land was sold, and conveyed to George F. Carter by a special commissioner, March 18, 1871. Harrison W. Carter reconveyed to his father all the right, title and interest he had in the land, by a deed dated, March 24, 1871. About two years later, March 28, 1873, George F. Carter, believing himself to be the owner of the land, conveyed it to Harrison W. Carter, in consideration of $1.00 and the covenant of the grantee comfortably to maintain and support the grantor and his wife, on the land, during their lives, and upon condition that he should do so. The clause imposing this condition and defining the estate granted reads as follows: ''It being expressly understood that this conveyance is made by the party of the first part to the party of the second part on the conditions aforesaid, and that the said party of the second part is not to sell or dispose of the said property, but is to hold the same for the purpose aforesaid; And to be held and enjoyed by said party of the second part, during his life, and at his death to descend to his heirs. The said party of the first part in consideration of the said party of the second part performing the conditions aforesaid grants'' etc. By a deed dated, July 17, 1873, Harrison W. Carter reconveyed the land to George F. Carter, reciting as the occasion and consideration thereof, dissatisfaction of the parties with the arrangement provided for by the deed of March 28, 1873, and their mutual desire to revoke and annul that deed. About six months thereafter, January 7, 1874, George F. Carter conveyed the land to Tilton T. Carter for his life, with a remainder in fee to his son, if he should have one, and, if not, to his daughters, for and in consideration of $2,000.00, $1,500.00 of which had been paid and the residue of which was represented by two promissory notes for $250.00 each. The grantor reserved to himself a life estate in the land and provided for a gift over to John and Arthur Sullivan, in the event of the death of Tilton T. Carter without issue.

Treating the provision of the deed of April 5, 1856, for the heirs of George J. Carter and H. W. Carter as remainders in fee to them, counsel for the appellees insist that the reconveyances to George F. Carter, one by the special commis-

sioner in the chancery cause and the other by Harrison W. Carter, carried back to him only the estates for life created by that deed; that his subsequent conveyance to Harrison W. Carter passed nothing more than a life estate; that Harrison W. Carter's conveyance to George F. carried only a life estate; that George F.'s deed to Tilton T. Carter conveyed only estates for the lives of George J. and Harrison, the latter of whom is still living. George J. Carter died, leaving one son, Arthur B. Carter, who by a deed dated, September 15, 1909, granted all of his right, title and interest in the land to Harrison W. Carter, Sarah J. Carter and Cynthia Morrison, wife and daughter, respectively, of Harrison. The claim is that by this deed they acquired the remainder in fee in one moiety of the land, and that title to the remainder in fee in the other is vested in Cynthia Morrison and L. H. Carter, the only children of Harrison W. Carter, one-half of which, being one-fourth of the entire tract, was conveyed as to the oil and gas, to the Reserve Gas Company by L. H. Carter, by a deed dated, June 5, 1909.

Neither questioning nor denying the use of the word "heirs" in its technical sense, in the deed of 1856, counsel for all parties virtually agree that the words making provisions for heirs therein, are, by the common law, words of limitation, and that the deed would vest in the grantees fee simple estates in the land. As to this, the authorities are clear, however. 2 Min. Inst. 2nd Ed. 343; 2 Wash. Real Prop. 649; Fearne's Rem. 30, 33. The controversy, as regards the effect of this deed, arises over the interpretation of the statute, sec. 11 of ch. 71 of the Code, modifying or abolishing the famous common law proposition, known as the Rule in Shelley's Case, the application of which would have produced this result. For the appellant, it is insisted that the statute is not broad enough in its terms to take this provision out of the operation of that rule. The contention is that there are three classes of cases falling within its operation, to which the statute does not extend: (1), a conveyance on a valuable consideration, to a life tenant, with a remainder in fee to his heirs; (2), a conveyance to a person for the life of another, with such a remainder; and (3), a conveyance

to a person for life, with a remainder mediately, not immediately, to his heirs; and that this deed is within all of the omitted classes.

· The statute reads as follows: "Where any estate, real or personal is given by deed or will to a person for his life, and after his death to his heirs, or to the heirs of his body, the conveyance shall be construed to vest an estate for life only in such person, and, a remainder in fee simple in his heirs or the heirs of his body." It first appeared in the Code of 1849. Deeming it to be defective in these respects, in view of criticism made by Dr. Minor, 2 Min. Inst. 411, 4th Ed., and other high authorities, the legislature of Virginia amended it. Virginia Code of 1887, sec. 2423. But, in this state, it remains in its original form. Dr. Minor intimates that it was adopted from a New York statute, but it more nearly resembles the Massachusetts statute.

Being in derogation of the common law and pertaining to property rights, it falls under the rule of strict construction. *Bank of Weston* v. *Thomas,* 75 W. Va. 321; *Harrison* v. *Leach,* 4 W. Va. 383; *Davis* v. *Commonwealth,* 17 Gratt. 617; *Woodyard* v. *Austin,* 12 Heisk. (Tenn.) 581; *Ex parte Buckley,* 53 Ala. 42. Dr. Minor's criticisms of this statute are no doubt founded largely upon the application of this rule of interpretation. His construction agrees with that of some other text writers. "It may be questioned whether many of these statutes are comprehensive enough to accomplish their object. Thus, the Rule applies where the ancestor takes an estate of freehold, with remainder to his heirs, etc.; while many of the statutes abolishing it only embrace by their terms those cases where the ancestor's estate is for his life. The terms of these statutes, therefore, would not be applicable where the prior estate is to the ancestor for the life of another, nor, indeed, where he takes any freehold estate save only for his own life." 25 Am. & Eng. Ency. L. 653.

This rule of construction, however, does not require the words of a statute to be taken in their narrowest sense, nor in any particular sense, if they will bear such construction or interpretation as will effectuate the legislative intention. *United States* v. *Hartwell,* 6 Wall. (U. S.) 385. Effect must

be given to the plain meaning of the language. *Bolles* v. *Outing Company,* 175 U. S. 262; *United States* v. *Winn,* 3 Sumn. (U. S.) 209. Such a statute includes what is within its spirit and terms or a necessary implication arising from its purpose and terms, and nothing more. *Bank of Weston* v. *Thomas,* 75 W. Va., 321; *Thompson* v. *Weller,* 85 Ill. 197; *Carpenter* v. *Mitchell,* 50 Ill. 471; Lewis' Suth. Stat. Con., 2nd Ed., secs. 568, 573.

In as much as the word "given" used in the statute has both a technical and a popular meaning, the presumption is that it was used in its popular sense. *Mitchell* v. *Blanchard,* 72 Vt. 85; *State* v. *Jacksonville Terminal Co.,* 41 Fla. 363; *Holman* v. *School District,* 77 Mich. 605; *Southern Bell Tel. & Tel Co.* v. *D'Alemberte,* 39 Fla. 25. The principal requirement of the rule of strict construction is that the effect given to a statute shall not extend beyond the terms used in it. To allow this statute effect, in the case of a conveyance for valuable consideration, does not violate the rule in this respect. The legislative purpose was modification of the Rule in Shelley's Case, in the construction of both deeds and wills. The term "given" was used in the sense of "conferred," "passed," "conveyed" and the like, and for convenience. Such a conveyance is, therefore, within both the spirit and the terms of the statute. Strict construction of a statute as a whole does not preclude liberal interpretation of some of the terms actually used, to the end that the legislative purpose may be accomplished, and necessary implications arising from the context and other terms carried out.

The terms of the statute accord with a form of grant, bequest and devise very frequently and generally used from time immemorial, for establishment of certain relations between persons and property, creation of a life estate and a remainder in fee or fee tail to the heirs of the life tenant, immediately and directly after his life estate. There are other forms in which a second life estate is interposed between that of the first taker and right of possession in the remainderman, or in which the first taker is given an estate for the life of a third person. They are equally common and well known in conveyancing, but the legislature has seen fit

so to limit the terms of the statute that they literally apply only to the case of a grant, bequest or devise to a person for his life, and after his death to his heirs or the heirs of his body. Such a gift or grant is manifestly not the same in character as one to a person for his life, and after his death to another for life and then to the heirs of the first life tenant. If it had been the legislative purpose wholly to abrogate the common law rule, it could have been abolished by name, for it was well known, or by the use of terms broad enough to include every case falling within it. Failure to adopt either of the two perfectly plain courses and the use of terms limited to one class of limitations falling within the rule argue strongly against intent to effect total abrogation. Statutes so dealing with the rule are universally construed as having modified it and as not having wholly abolished it. Under the Rhode Island statute which abolishes the Rule in Shelley's Case in any instance in which a person takes an estate for his life, with a remainder in fee to his heirs, the court declined to apply it in any case in which after a life estate, there was a limitation to the heirs of the body of the first taker. *Manchester* v. *Durfee*, 5 R. I. 549; *Thurston* v. *Thurston*, 6 R. I. 296; *Cooper* v. *Cooper*, 6 R. I. 261; *Andrews* v. *Lowthrop*, 17 R. I. 60. The New Jersey statute relating to the subjecct, though much more elaborate in its terms than ours, is held, under the rule of strict construction, not to have wholly abolished the common law rule, nor to extend beyond its clear terms. *Cabriskie* v. *Wood*, 23 N. J. Eq. 541; *Lippincott* v. *Davis*, 59 N. J. L. 241; *Lamprey* v. *Whitehead*, 64 N. J. Eq., 408. Under the New York statute, sec. 54, Art. 3, Cons. Laws, 1909, the courts of that state hold that, under a deed like the one in question here, the words of limitation to the heirs are words of purchase. *Monarque* v. *Monarque*, 80 N. Y., 320; *Surdam* v. *Cornell*, 116 N. Y., 305. That interpretation, however, would fall within the terms of the New York statute which does not define the life estate as ours does. It provides that if a remander is limited to the heirs, or the heirs of the body, of a person to whom a life estate, (any life estate), in the same premises is given, the persons who, on the termination of the life estate,

are the heirs, or heirs of the body, of such tenant for life, shall take as purchasers. It is obvious that these terms do not contemplate a single life estate with a remainder immediately limited upon it, as ours does. Under them, only two things are required, termination of a life estate and a remainder to heirs of the life tenant. Our statute, measured by its terms, contemplates immediate connection between the life estate and the remainder. Fairly interpreted, they exclude dispositions of a different kind, and, obviously, they do not include them by necessary or clear implication.

The deed now under consideration gave to the life tenants a joint estate in the land, for their lives, with the right of survivorship, and remainders in fee to their heirs. The statute saves a right of survivorship expressly created by deed or will. Code, ch. 71, sec. 19. Under the Rule in Shelley's Case, the deed vested estates in fee simple in Geo. J. & Harrison W. Carter. 2 Min. Inst. 2nd Ed., 346. The life tenants were seized *per mie et per tout*. Each of them had a concurrent interest in the whole of the land, not a life estate in a moiety of it, and it could not be divested by the death of his companion. Bl. Com. Bk. 2, p. 184. In consequence of this, the heirs of one might or might not have taken immediately after him. It was certain that one set would so take and that the other would not, but altogether uncertain which set of heirs would be in either situation. The statute contemplates a taking by a person for *his* life and *after his* death by *his heirs*. Here, one set of heirs were bound to take after a person of whom they were not heirs. Hence, the case does not fall within the terms of the statute, even though it may be within its spirit.

Against this conclusion, the decision in *Irvin v. Stover,* 67 W. Va. 356, is invoked as a precedent; but that decision proceeds upon the theory of a single life estate in the whole of the land, the life tenants being husband and wife and each taking a life estate by entirety. They being, in contemplation of law, one person, there was technically and legally only one life estate and the remainder was given immediately after it to the heirs of the life tenant. If an estate be given to a husband and wife together, they are not, at common law,

either joint tenants or tenants in common. Both are seized of the entirety, *per tout et non per mie.* Bl. Com. Bk. 2, p. 182. It is still so in the case of a life estate given to them. *Irvin* v. *Stover,* cited. Here, there could have been no such life estate. The life tenants did not bear the relation essential to the creation of an estate by entireties. Our conclusion on this branch of the case is, that George J. Carter and Harrison W. Carter took by the deed of 1856, estates in fee simple, which afterwards were re-acquired by the grantor.

All of the estates created by the deed of March 28, 1873, were conditional and dependent for their future existence upon performance of the condition subsequent, rendition of care, attention, support and maintenance to the grantors. It cannot be assumed logically, that only the life estate was to be paid for by performance of this condition and the remainder in fee was to be a mere gratuity. Both were disposed of upon the same consideration and maintenance of a hold upon both was essential to the protection of the grantor's right of support. That condition was never performed. Within less than four months, Harrison W. Carter re-conveyed the land to his father who had never been out of possession thereof. It is said there is no evidence of Harrison's failure to perform, since the deed of re-conveyance does not recite it. On the contrary, it is said the deed on its face reveals mere mutual dissatisfaction and a cash consideration of $400.00, as the motive of the re-conveyance, and that, in point of law and fact, the transaction was a purchase by George J. Carter. We are of the opinion, however, that it was a rescission, on failure of performance of the condition. This is the only reasonable deduction from the facts disclosed, by the deed, and the demurrer does not carry our inquiry beyond it. Harrison had the title for nothing but his covenant. In lieu of performance, he re-conveyed for a release from the covenant and $400.00 in cash. The result was infinitely worse than mere non-performance. The deed of March 28, 1873, contains no forfeiture clause, nor any clause of re-entry, but such clauses are not essential to the right of rescission in such cases. *Glocke* v. *Glocke,* 89 N. W. 613; *White* v. *Bailey,* 65

W. Va. 573.   For non-performance of the condition, there was
a right of forfeiture, which the grantor could enforce by re-
entry, if necessary, and which a court of equity would have
protected by a decree quieting the title and canceling the
deed.   As the grantor was in possession, no re-entry was re-
quired or possible, and resort to a court of equity was render-
ed unnecessary by the reconveyance.

Intent to vest a fee simple estate in Harrison W. Carter
cannot be inferred from the use of the words "to descend,"
in this deed, for they must be considered in connection
with their context.   Harrison's estate is expressly limited to
the duration of his life.   The deed says the property is "to
be held and enjoyed" by him "during his life."   If this in-
formal clause may be treated as an habendum, it limits the
grant to one for life, for the premises grant the land in gener-
al terms.   In such case, the estate is limited and defined by
an habendum saying the grantee shall hold for life.   *Freud-
enberger Oil Co.* v. *Simmons,* 75 W. Va. 337, 341; 2 Min.
Inst. 2nd Ed., 629; 2 Lomax Dig. 215; *Humphrey* v. *Foster,*
13 Gratt. 653.   If it is to beregarded as a part of the premises,
the limitation is still more obivous.   These express terms
are not overthrown nor qualified by any presumption that the
words "to descend" were used in their technical sense.   A
mere presumption always yields to the force of express words
of negative import.   Nor does the inhibition of sale or dis-
position of the   property clearly or conclusively import in-
tention to grant a fee simple title.   It may have been intended
to apply to a mere life estate as well as to a fee simple estate.
In some cases, the word "descend" in wills and deeds has been
allowed a strongly persuasive influence, in the interpretation
of ambiguous or doubtful provisions found in other parts of
the instruments or to resolve a doubt as to the intent express-
ed by an entire instrument.   *Chipps* v. *Hall,* 23 W. Va. 504;
*Browning's Petition,* 16 R. I. 441; *Eaton* v. *Tillinghast,* 4 R.
I. 276; *Taney* v. *Fahnley,* 126 Ind. 88.   In most, if not all, of
these cases, it was invoked and applied in aid or enforcement
of the theory of the vesting of fee simple estates under the
Rule in Shelley's Case, with which it harmonized.   There
are many other cases in which it has been held to have been

used in its common or ordinary sense and to have meant the same as the word "go" or "pass". *Borgner* v. *Brown,* 133 Ind. 391; *Doren* v. *Gillum,* 136 Ind. 134; *Halstead* v. *Hall,* 60 Md. 20; *Tate* v. *Townsend,* 61 Miss. 316; *Jones* v. *Crawley,* 68 Ga. 175; *Moore* v. *Weaver.* 16 Gray. (Mass.) 305. That is the sense in which it was used in this deed, wherefore the deed vested a life estate in Harrison and a remainder in fee in his heirs, all of which failed by reason of non-performance of the condition subsequent, unless the case differs from what the bills and exhibits purport to make it.

The cause was argued here as if it had been disposed of upon full hearing. Two answers were filed, one of which was brought up as part of the record. The court below dismissed the original and first, second and third amended bills. Nevertheless, the final decree was pronounced on the demurrers to the third amended bill. It did not in terms nor otherwise, so far as the record discloses, bring the cause on to be heard upon the answers, though they had been filed. Except in so far as it dismissed the bills, it was interluctory and was limited to the law arising only upon the allegations of the bills. It retained the answers for the purpose of awarding affirmative relief to the defendants, after dismissal of the bills, on the theory that the latter had fallen by reason of their own infirmaties, not because their allegations had been refuted by the answers and proof. Obviously, therefore, the case as presented here does not justify the entry of a final decree. Our order will reverse the decree complaind of and the order of June 5,, 1915, sustaining demurrers to the first amended and supplemental bills, overrule the demurrers to the first, second and third amended bills, remand the cause and award costs in this court to the appellants.

*Reversed, demurrer overruled, remanded.*