# CHARLESTON.

Marshall W. Rust v. Commercial Coal & Coke Co. *et als.*

Submitted November 14, 1922.     Decided December 5, 1922.

1.  Deeds—*Estates Created by Deed Stated.*

    In 1857, a father granted a tract of 165 acres of land in Harrison County, now West Virginia, to his daughter, the deed containing the following habendum clause:

    > "To have and to hold the above described tract or parcel of land in her own right, and not to be owned or controlled by her husband, should she ever marry, and at her death, said land is to pass to the heirs of her body should she have any, if she should not then same is to pass to her brothers and sisters and their heirs. It is here fully understood that this deed is not to take effect until after the death of the said Truman Gore, nevertheless, the Susan L. Gore shall have the right to make any improvements she may desire to make on said land provided the same be at her own expense and not *interfear* with the said Truman Gore *dcering* his life."

    The deed created or carved out three estates: (1) a life estate reserved to the father; (2) a life estate granted to the daughter; and (3) a contingent remainder in fee-conditional to the heirs of her body, which remainder, in default of such heirs was to go to her brothers and sisters.  (p. 470).

2.  Same—*Grant to One for Life With Remainder to Heirs of the Body Creates Life Estate With Contingent Remainder to Heirs of Body.*

    Under the common law Rule in Shelly's case the estate granted to the daughter was a fee-conditional, not merely a life estate; but section 11, chapter 71, Code, modified the Rule in Shelly's case and prevented its operation on the estate granted, so that under the statute she took but a life estate, with a contingent remainder to the heirs of her body. (p. 471).

3.  Same—*Rule in Shelley's Case Not Affected by Precedent Estate in Grantor or Passage of Contingent Remainder to Brothers and Sisters of Grantee in Default of Heirs of Body.*

    The Rule in Shelly's case was not affected by the fact that a precedent life estate was reserved to the father, or that the contingent remainder was to pass to the brothers and sisters of the grantee in default of heirs of her body.  (p. 472).

4.   MORTGAGES—*Where Trust Lien Given on Lands Purchased with Proceeds of Sale of Life Estate to Protect Title, Grantee's Interest Limited to Trust Lien.*

The daughter, life tenant, in the 165 acres, sold and conveyed the fee therein to Gore. The purchase money paid thereon by him was invested by her in a farm and village lot in Virginia. Gore took, as a pledge or security to secure his title from defects or want of power in the life tenant to convey, a trust lien on the Virginia lands to the amount of the purchase money paid by him. He had thereafter no interest in the equity of redemption, but his interest in the Virginia land was limited to his trust lien thereon. (p. 474).

5.   WILLS—*Acceptance Under Will of Land Purchased With Proceeds of Sale of Life Estate Held Not to Preclude Devisees from Discharging Trust Lien to Protect Title and Reclaim Estate.*

The daughter died seized of the Virginia farm and village lot. She left a will by which she devised the farm to her grandson, and the village lot to her granddaughter, remaindermen in fee of the 165 acres; their acceptance of the respective properties devised to them, subject to the trust lien thereon, did not amount to a confirmation of the wrongful conveyance by the life tenant of their fee in the 165 acres, but they had the right to discharge the trust lien by payment and reclaim the 165 acre tract. (p. 476).

6   SAME—*Devisees of Land, Purchased With Funds Received from Life Estate Held Not Estopped to Claim Through Devisee Such Life Estate.*

In 1892, Gore conveyed the Pittsburgh coal under the 165 acres to defendant coal company, and later · executed an oil and gas lease thereon, including therein other lands belonging to him, which was assigned to Clarksburg Light & Heat Company. There was no development of the coal, oil or gas under the 165 acres. In 1907, the life tenant died, and the title to the 165 acres vested in her grandson, the plaintiff, and her granddaughter, remaindermen under the deed of 1857. The life tenant devised the Virginia farm to the grandson and the village lot to the granddaughter, subject to the trust lien in favor of Gore. A few months thereafter Gore died, leaving a will by which he devised all his lands, including the 165 acres, to ·his four sons, one of whom qualified as his executor. In 1911, the granddaughter, in an action of ejectment against ·Gore's · devisees and alienees, obtained a judgment for her half interest in fee in the 165 acres. In 1912,

92 W. Va.

Gore's executor and devisees purchased her half interest by paying $12,400 to her guardian and releasing the trust lien on the village lot. Immediately thereafter they conveyed to defendant Coal Company the half interest in the Pittsburgh coal underlying the 165 acres, reciting in.the deed that it was the same land that day conveyed to them by the granddaughter's guardian.

In 1913, plaintiff, the grandson, entered into an arrangement whereby he conveyed to Gore's devisees his half of the surface of the 165 acres down to the top of the Pittsburg vein of coal, and the surface to a depth of 75 feet where there was no Pittsburgh coal; also certain other rights in the land, including his portion of the oil and gas, except the 5/16ths which he expressly reserved. He also reserved all the coal and especially the Pittsburg vein, and other minerals, save the oil and gas interests conveyed, with right to remove them. under limitations as to damages to the surface; his right to sue for recovery of the Pittsburg coal was recognized, but he agreed to pay to Gore's devisees a portion of the original sale price thereof in case they were required to refund it to defendant Coal Company. Plaintiff was also to be paid a certain proportion of the delay well and farm rentals theretofore collected by the Gores under the oil and gas lease, including also those that might thereafter be collected by them so long as the lease remained in force on the 165 acres. Certain unpaid purchase money notes given by Gore to the life tenant as part of the purchase price for the 165 acres were surrendered to Gore's executor. Gore's executor and devisees released the trust-lien on the Virginia farm. Under these circumstances, the transactions detailed show a disaffirmance rather than a recognition of the validity of the Gore title to the 165 acres; if plaintiff recognized the Gore title, the Gores also.recognized his, and the one off-sets the other; and estoppel against an estoppel sets the matter at large; Gore's alienee, the claimant of the Pittsburgh coal, occupies no higher ground than Gore's devisees and plaintiff is not estopped from recovering his portion of the Pittsburgh coal. (p. 477).

7.   EXECUTORS AND ADMINISTRATORS—*Administrator Had Right to Release Trust Lien in Favor of Deceased.*

The estate of Gore being amply able to respond in damages for breach of Gore's warranty of title in his deed conveying the Pittsburg coal to defendant, and no fraud being shown. Gore's executor and devisees had a right to release the trust-lien on the Virginia lands, without defendant's consent. (p. 478).

Appeal from Circuit Court, Harrison County.

Suit by Marshall W. Rust against the Commercial Coal & Coke Company and others. From a decree dismissing plaintiff's bill for want of equity, he appeals.·

*Reversed and remanded.*

*E. G. Smith* and *Brown, Jackson & Knight,* for appellant.
*R. S. Douglass* and *Hoffheimer & Templeman,* for appellees.

MEREDITH, JUDGE:

Plaintiff brought suit to partition a tract of 165 acres of Pittsburgh coal located near Clarksburg. He claims an undivided half thereof and concedes that the other half belongs to defendant, Commercial Coal & Coke Company; that company filed its answer claiming title to all the coal. On final hearing the court entered a decree dismissing plaintiff's bill for want of equity. Plaintiff appealed.

The following facts appear:—

1. By deed dated December 16, 1857, Truman Gore and wife conveyed to their daughter, Susan L. Gore, the 165 acres, the deed containing the following habendum:—

> "To have and to hold the above described tract or parcel of land in her own right and not to be owned by her husband, should she ever marry and at her death the land is to pass to the heirs of her body, should she have any. If she should not, then the same is to pass to her brothers and sisters and their heirs. It is here fully understood that this deed is not to take effect until after the death of the said Truman Gore nevertheless the Susan L. Gore shall have the right to make any improvements she may desire to make on said land provided the same be at her own expense and not *interfear* with the general *farning opperation* of the said Truman Gore *dcering* his life."

2. At that time Susan L. Gore was unmarried and had brothers and sisters living. It will be observed that her father reserved to himself a life estate. He died in 1858. Susan L. Gore married Cruger W. Smith September 18,

1860, and had one child, Flora Smith, who was born October 1, 1861. Flora Smith is the only child Susan L. Smith, nee Gore, ever had. Cruger W. Smith died January 3, 1875.

3. Flora Smith, daughter of Susan L. Smith, was married twice; on January 24, 1883, to Dr. Charles B. Rust, by whom she had two children,—Marshall W. Rust, who is the plaintiff herein, and who was born March 15, 1885, and a daughter, Mary Lee Rust, who died in infancy, without issue. Dr. Rust died October 18, 1885.

4. On August 22, 1883, Solomon D. Gore, brother of Susan L. Smith, entered into a contract with her for the purchase of the 165 acre tract for the sum of $7000. The agreement provided:

> "Of the consideration aforesaid the said S. D. Gore is to deposit in the Merchants Bank of Clarksburg, W. Va. on or before the 1st day of Sept. next, subject to be drawn upon the joint check of said Susan L. Smith and her daughter Mrs. Flora Rust, the sum of Two Thousand Dollars, which is to be applied as payment on real estate to be purchased by the said Susan L. in Clarke Co. Virginia, and to be applied for no other purpose, the remaining $5000 is to be paid as follows, to-wit, $3000 on or before the 1st day of Nov. next and $2000 in two equal annual installments with interest from date, and it is expressly understood that the real estate purchased by said Susan L. Smith in Clarke Co. Virginia is to stand as a pledge or security to the said S. D. Gore for the title to the tract of land hereinbefore mentioned, and the said Susan L., together with her said daughter are to convey to such person as shall be agreed upon between them and the said S. D. Gore as trustee, such land or lands as shall or may be purchased with the proceeds of the said 165 acres aforesaid to secure and indemnify the said S. D. Gore against any defects of title in said 165 acres, or any want of power, right or authority on the part of the said Susan L. and her daughter, Flora Rust, or either of them, to sell and convey said land as well as against any loss or damage to the said S. D. Gore may or shall sustain by reason of any of the heirs of the said Truman Gore dec'd or any other person setting up any title or claim to said 165 acres. And it is expressly

understood, that no part of the said two thousand so deposited in the Bank aforesaid, nor any part of the remainder of said consideration is to be drawn from said Bank, or used unless it is used and invested in real estate and if it is ascertained by S. D. Gore that said money is being used for any other purpose, he shall have the right to countermand the withdrawal and payment of said money by said bank. And it is further understood that the money due on the deferred payments is to be deposited in the Merchants National Bank at Clarksburg to be drawn as aforesaid and subject to the above conditions.''

On September 1, 1883, Susan L. Smith, then a widow, and her daughter, Flora Smith Rust (plaintiff's mother) and hsuband, conveyed with general warranty to Solomon D. Gore the 165 acre tract in fee, pursuant to the terms of the above recited contract; $2000 of the purchase price was paid in cash, and $3000 on November 1, 1883. The balance was evidenced by the grantee's notes, secured by a vendor's lien on the land.

On October 1, 1883, Susan L. Smith and Flora Smith Rust, purchased a farm of 100 acres, located in Clarke County, Virginia, for $3400; $2000 of which was paid in cash, the balance of $1400 to be paid on or before November 5, 1883, and secured by vendor's lien. This lien was released December 2, 1885. On November 30, 1883, in consideration of $2000 cash, Dr. Charles B. Rust and Flora S. Rust, his wife, conveyed to Susan L. Smith and S. J. C. Moore, Trustee for Flora Smith Rust, wife of Charles B. Rust, a house and lot in Millwood, Clarke County, Virginia, one-half to be held by Susan L. Smith in fee, the other half to be held by Moore, as trustee for the sole use of Flora Smith Rust free from the control or debts of her husband. It appears that the $5000 paid by Solomon D. Gore on the purchase price of the 165 acres was used in part payment for the 100 acre Virginia farm and the Millwood house and lot. The $400 additional necessary to complete payment for the Virginia properties came from some other source. At any rate, Solomon D. Gore did not furnish it.

Susan L. Smith and Flora Smith Rust failing to secure or indemnify Solomon D. Gore in the payment of the $5000 according to the terms of the contract, at July Rules, 1884, he filed his bill in the Circuit Court of Clarke County, Virginia, against them, Charles B. Rust and S. J. C. Moore, Trustee, to enforce the agreement and to require them to indemnify him against any defect in the title to the 165 acres purchased by him, and to have such indemnity to the extent of the $5000 which had been invested in the 100 acre tract and the Millwood house and lot secured by a lien thereon. · The Court on October 7, 1884, entered a decree requiring the defendants Susan L. Smith, Charles B. Rust and Flora Smith Rust, within sixty days from its entry, to convey the 100 acre farm and the Millwood lot to A. Moore, Jr. Trustee, in trust to secure and indemnify Solomon D. Gore, as provided in the contract, against any defect in the title to the 165 acres, or against any want of power in Susan L. Smith and Flora Smith Rust to convey the same as it had been conveyed. That decree, omitting minor matters and recitals, is as follows:

> "And the Court being of the opinion that under the agreement exhibited with and as part of said bill that the Complt S. D. Gore is entitled to be indemnified against any defect of title in the tract of 165 acres conveyed by the said Susan L. Smith, Charles B. Rust and Flora his wife to the said Complt situated in Harrison Co. W. Va. or against any want of power, right and authority on their part to sell and convey said land, and that under said agreement such indemnity should be secured as a lien upon the 100 acres of land in Clarke County purchased of Robt. C. Harris & wife, and upon the house and lot in Millwood in Clarke County to the extent of five thousand dollars which has been invested in said tract and *and* lot, and that such lien should be paramount to any incumbrance put upon said property by any or all the Defendants since the said $5000 has been invested therein doth adjudge order and decree that unless the said defendants Susan L. Smith, C. B. Rust & Flora his wife shall within sixty days from this date execute

and deliver a deed to A. Moore, Jr. Trustee conveying the said tract of land and the said lot in trust to secure and indemnify, as provided in said agreement against any defect of title in the said 165 acres, or against any right, power or authority in the said Susan L. Smith and the said Flora Rust or in either of them to convey said land the same has been conveyed, then it shall be the duty of A. W. McDonald, who is hereby appointed a Special Commissioner for the purpose to execute and deliver such deed to the said A. Moore Jr. Trustee. In the deed conveying the house and lot in Millwood, the said S. J. C. Moore Trustee is hereby directed to join in the execution thereof."'

The defendants failed to execute the trust as required by the decree and on March 15, 1885, A. W. McDonald, special commissioner, and S. J. C. Moore, Trustee, pursuant to the decree above quoted, conveyed the 100 acre farm and Millwood lot to A Moore, Jr.,

"In trust nevertheless, for the following purposes that is to say, the said A. Moore Jr. shall hold the said property for the purpose of indemnifying the said S. D. Gore against any defect of title in the tract of 165 acres conveyed by the said Susan L. Smith, Charles B. Rust and Flora his wife to the said S. D. Gore, the said tract of 165 acres being in Harrison County, W. Va. or against any want of power right or authority on their part to sell and convey said land to the said S. D. Gore to the extent of $5000 which has been invested in said tract and lot, and that such lien shall be paramount to any incumbrance put upon said property by any. or all the Defts since the said $5000 has been invested therein for the purpose of more fully defining the trusts upon which this conveyance is made, reference is here made to said decree, and the record of said court."

This deed of trust was recorded in Clarke County, April 24, 1885.

5. Charles B. Rust died October 18, 1885. On July 16, 1887, his widow, Flora. Smith Rust, conveyed her interest in the 100 acre tract and the Millwood house and lot to her mother Susan L. Smith.

6.   On June 10, 1892, Solomon D. Gore conveyed to defendant Commercial Coal & Coke Company, with general warranty, the Pittsburgh coal and mining rights underlying the 165 acre tract.

7.   On June 1, 1897, Flora Smith Rust married James H. Matile; by him she had one child, Flora Shafter Matile. On June 12, 1902, Flora Smith Rust Matile died, leaving surviving her her two children, Marshall W. Rust, plaintiff herein, a child by her first marriage, and Flora Shafter Matile, a child by her second marriage. Her mother, Susan L. Smith, formerly Gore, survived her daughter about five years, dying July 24, 1907, leaving a will by which she devised the 100 acre Virginia farm to her grand-son, Marshall W. Rust, and the Millwood house and lot to her grand-daughter, Flora Shafter Matile. The plaintiff was named and qualified as executor of this will; and as devisee entered upon and accepted the 100 acre farm as his own.

8.   On May 10, 1905, Solomon D. Gore and wife executed an oil and gas lease covering 565 acres, including therein the 165 acre tract. The lease later passed by assignment to Clarksburg Light & Heat Company. That company drilled a number of wells on the 565 acre tract, but drilled none on the 165 acres, part thereof.

9.   Solomon D. Gore died in 1907, leaving surviving him his widow and four sons. By will, he devised all his property to his sons, subject to his widow's right of dower, and appointed his son, Howard M. Gore, his executor, who qualified as such. The land devised consisted of about 565 acres, including the 165 acre tract involved in this suit. The Pittsburgh coal under it had been sold to defendant Commercial Coal & Coke Company, and it was under lease for oil and gas to Clarksburg Light & Heat Company, as heretofore stated.

10.   In 1910, Flora Shafter Matile, then an infant, by her father as her next friend, brought an action of ejectment against Solomon D. Gore's devisees, the defendant Coal Company, and Clarksburg Light & Heat Company for the recovery of an undivided half interest in the 165 acres. The

case was transferred to Marion County, where it was sub-
mitted to Honorable John W. Mason, the presiding circuit
judge, in lieu of a jury, upon an agreed statement of facts.
That statement was substantially the same as hereinbefore
set out, except the transactions in regard to the Virginia
lands do not seem to have been considered by him. He held
that the plaintiff, Flora Shafter Matile, was entitled to re-
cover and judgment was entered in her favor for a half of
the 165 acres in fee. While steps were being taken to apply
to this court for a writ of error, the devisees of Solomon D.
Gore purchased her interest through a summary proceeding
instituted by her guardian. By deed dated January 31, 1912,
these devisees quitclaimed the undivided half-interest in the
Pittsburgh coal underlying the 165 acre tract so acquired to
defendant Commercial Coal & Coke Company. Plaintiff
concedes it owns that interest.

11. On July 14, 1913, plaintiff entered into a compro-
mise agreement with the executor, the sons and widow of
Solomon D. Gore, deceased, which after various recitals pro-
vided:

(a). That the Gores release and convey to Rust all their
claims, liens, indemnity or right and interest in the 100
acres in Clarke County, Virginia, devised to him by Susan
L. Smith.

(b). That Rust grant, release and convey to the Gores all
his interest in the surface of said 165 acres in Harrison
County, West Virginia, down to the top of the Pittsburgh
vein of coal, and the surface of any of said land not under-
laid with the Pittsburgh vein of coal to a depth of 75 feet;
also the right to drill wells for water to a depth of 500 feet,
Rust not to be liable for damage to such wells by reason of
mining operations below the depths conveyed and reserved
to them. Rust retained all his interest in the Pittsburgh
coal and all other seams of coal, and his interest in all other
minerals below the depths mentioned, except oil and gas
which was to be divided as hereinafter provided; Rust also
reserves the right to mine all the coal and other minerals

so reserved but is to be liable to the Gores for damage to the surface of the land or value thereof as later stated.

(c). If Rust should recover his interest in the coal under the 165 acre tract sold by Solomon D. Gore in his life time and the Gores should be required to make settlement therefor with the vendee of Solomon D. Gore, then Rust is to pay to the Gores one-eighth of the entire purchase money paid to Solomon D. Gore for the coal sold by him under the 165 acre tract, with interest thereon from the time of such payment to the time of such reimbursement.

(d). Rust retains and is to have 5/16ths of the proceeds accruing to parties of the second part (the Gores) from the production of oil or gas from any wells drilled on said 165 acres, under the terms of the recited oil and gas lease, or subsequent agreements made thereto to date, so long as the said lease on the 565 acre tract remains in effect as to the 165 acre tract; also 5/16ths of 165/565ths of all delay well rentals and farm rentals from April 25, 1911, accruing to the Gores under the lease, and subsequent agreements made thereto to date, same to be received by each so long as same shall remain in effect on the 165 acre tract, but Rust is not to receive any part of the proceeds of gas well rentals or from the proceeds of the sale of oil produced from wells now drilled or that may hereafter be drilled on the lands of the Gores, not located on the 165 acre tract. If by litigation or otherwise the lease becomes inoperative or cancelled as to the 565 acre tract or as to the part or interest claimed by Rust in the 165 acre tract, then he shall have 5/16ths of the oil and gas in the 165 acre tract and the Gores shall have the residue. All payments due Rust for delay well and farm rentals from April 25, 1911, shall be paid him in thirty days from date, and subsequent rentals due shall be paid him by the Gores within ten days after they become due to the Gores from the Clarksburg Light & Heat Company, so long as the lease remains in effect as to the 165 acre tract. But it is expressly agreed that Rust does not bind himself to ratify the oil and gas lease on the 165 acre tract now held by the Light & Heat Company, but he reserves the right to bring action to re-

cover his interest in the oil and gas under the 165 acre tract.

(e). Rust is to be liable to the Gores for any damages to the surface or the value thereof caused by removal of his interest in the coal or other minerals or oil and gas. All release deeds and conveyances provided for in the agreement are to be executed and delivered within four months from July 1, 1913.

This agreement was carried out by Rust executing his deed to the Gores in accordance therewith October 27, 1913, and surrendering to Howard M. Gore, Executor, the notes for $2000 given by Solomon D. Gore to Susan L. Smith and Flora Smith Rust, dated September 1, 1883, representing the unpaid part of the $7000 purchase money for the 165 acre tract; on the same day said executor and the devisees and widow of Solomon D. Gore, deceased, released to Marshall W. Rust all claims, liens, indemnity, right and interests they had in the 100 acre Virginia farm.

We have stated at length the material matters so as to present clearly the claims of the parties. A separate suit was brought by plaintiff against the Clarksburg Light & Heat Company. That cause was also here on appeal but was dismissed on the submission of this cause, a settlement having been effected between the parties. Certain testimony taken in that cause, by agreement, is to be read in this cause, but otherwise there is no connection between the cases.

The main defendant in this case is the Commercial Coal & Coke Company, the Gores, who are named as defendants having done nothing more than file a plea which was adjudged insufficient on demurrer, and also filed their demurrer to plaintiff's bill.

The Coal Company makes the following defenses:

1. That the deed executed by Truman Gore, December 16, 1857, to Susan L. Gore, vested in her an estate in fee simple, and that our statute modifying the rule in Shelley's Case does not apply to a deed of this character.

2. That even if the Truman Gore deed granted only a life estate in the 165 acres to Susan L. Gore, with contingent remainder to the heirs of her body, the plaintiff is estopped to

repudiate the deed made by his grand-mother Susan L. Smith, nee Gore, and his mother Flora Smith Rust, to Solomon D. Gore, or to assert title to the land.

If the first proposition be correct, then plaintiff has no interest in the coal in controversy. When we analyze that deed we find that if the habendum clause were omitted there would be no doubt about defendant's proposition. The granting clause is as follows: "the said Truman Gore and Lydia, his wife, doth grant unto the said Susan L. Gore all" of the 165 acre tract, described by metes and bounds. The habendum clause follows the description. It was contended in the ejectment case of Matile v. Gore, decided by Judge Mason, that the habendum was to be ignored; that the grant was an absolute grant in fee to Susan L. Gore and the habendum had no effect; but in his well considered opinion copied in this record, he there held that all parts of the deed must be given effect, and that Susan L. Gore took only a life estate with a contingent remainder to the heirs of her body, of whom Flora Shafter Matile was one. However, at that time the case of *Carter* v. *Reserve Gas Company,* 84 W. Va. 741, 100 S. E. 738, had not been decided by this court.

It is now contended by counsel for plaintiff in their reply brief that the rule in Shelley's case does not apply to this deed; and by counsel for defendant that the rule does apply. It therefore becomes necessary to determine this question. The rule in Shelley's case has been variously stated, but however varied the statement, it has the same meaning. A concise statement is found in 4 Kent's Commentaries, 215, quoting the rule from 1 Preston, on Estates, 263, as follows: "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

1 Minor, Real Property, 753, states it as follows: "When-

ever an ancestor, by any will, gift, or conveyance, takes an estate of freehold in lands or tenements, and in the same will, gift or conveyance an estate is afterwards limited by way of remainder, either mediately or immediately, to his heirs or the heirs of his body, the words 'heirs' or 'heirs of his body' are words of limitation, carrying the inheritance to the ancestor, and not words of purchase, creating a contingent remainder in the heirs.''

When we examine the deed made to Susan L. Gore, we find there are three estates ''carved out'' by it: (1) a life estate reserved to Truman Gore; (2) a life estate granted to Susan L. Gore; and (3) a contingent remainder in fee conditional to the heirs of her body, which remainder, in default of such heirs is to go to her brothers and sisters.

That the grantor reserved a life estate to himself does not affect the matter. What we are to consider is the estate granted, not what was reserved. Nor do we think that the provision in the deed that it is not to take effect until after the death of Truman Gore has any bearing on the case. In *Lauck* v. *Logan*, 45 W. Va. 251, 31 S. E. 986, it was held:

> ''An instrument in form and name a deed of conveyance, acknowledged as such and delivered to the grantee, whereby, for consideration of five dollars and love and affection, the grantors 'do grant with general warranty' a tract of land closing with the clause. 'But it is hereby distinctly understood and stipulated that this deed shall take and be in full force and effect immediately after the said William Logan shall depart this life, and not sooner,' is a valid deed, not a testementary paper, and confers a vested remainder on the grantee, to come into enjoyment on William Logan's death.''

Under the terms of the deed in the case at bar, Susan L. Gore was not entitled to possession until the death of Truman Gore, save the mere license to enter and make improvements; but her estate vested upon execution and delivery of the deed, our statute, section 5, chapter 71, Code, providing that ''Any estate may be made to commence in futuro, by deed, in like manner as by will.''

The deed in terms grants to Susan L. Gore a life estate, with contingent remainder to the heirs of her body. If it falls within the rule in Shelley's case, the estate granted is a feetail, which under our statute barring entails, section 9, chapter 71, Code, would be converted into a fee simple. The authorities agree that the following circumstances must concur in order that the rule in Shelley's Case may be applicable: (1) The limitation to the heirs or heirs of his body must be such as would ordinarily create a valid contingent remainder in the heirs at common law; (2) The limitation must be to the heirs or heirs of the body of the *tenant* of the preceding estate, and of no other person; (3) The particular estate and that to the heirs or heirs of his body must be of the same quality, that is, both legal or both equitable; (4) The words "heirs" or "heirs of his body" must be used in the technical sense as importing an indefinite succession of heirs or heirs of the body. 1 Minor on Real Property, Sec. 754. That the grant satisfies all these requirements we have no doubt. There is granted to Susan L. Gore a life estate. The limitation to the heirs of her body creates a valid contingent remainder in fee-conditional at common law, which our statute converts into a fee simple. That limitation is to the heirs of the body of Susan L. Gore, the tenant of the preceding estate, and of no other person. It is only in default of such heirs that the remainder is to go to her brothers and sisters. The particular estate, that is, the life estate to Susan L. Gore and the contingent remainder to the heirs of her body have the same quality, that is, they are both legal estates. And lastly, the words "heirs of her body" are used in the technical sense as importing an indefinite succession of heirs of her body. Applying the rule, as stated by Minor, Susan L. Gore is the "ancestor" who by the deed took an estate of freehold, a life estate, in the 165 acres, and in the same deed, an estate is afterwards limited by way of remainder immediately to the heirs of her body; hence the words "heirs of her body" are words of limitation carrying the inheritance to the ancestor, Susan L. Gore, and not words of purchase, cre-

ating a contingent remainder in the heirs of her body. So we agree with counsel for defendant that at common law the estate granted to Susan L. Gore would be an estate in fee-conditional, which under our statute barring entails, as already stated, would be converted into fee-simple.

But counsel for plaintiff argue that our statute section 11, chapter 71, Code, modifying the rule in Shelley's Case makes that rule inoperative upon the estate granted in the present case, and prevents the life-tenant from taking more than a life-estate. That statute is as follows:

> "Where any estate, real or personal, is given by deed or will to any person for his life, and after his death to his heirs, or to the heirs of his body, the conveyance shall be construed to vest an estate for life only in such person, and a remainder in fee simple in his heirs or the heirs of his body."

On the other hand, defendant's counsel argue that under our holding in *Carter* v. *Reserve Gas Co.*, 84 W. Va. 741, 100 S. E. 738, the statute above quoted does not modify the rule in Shelley's Case in the present instance; that that statute must be stricly construed, being in derogation of the common law, and leaves the estate granted to Susan L. Gore by the Gore deed as at common law, hence a fee-simple estate in her. They say this is true for two reasons: First, because the deed created not merely a life estate in Susan L. Gore but also a life estate in the grantor, citing *Hurst* v. *Hurst*, 7 W. Va. 289, and *McDougal* v. *Musgrave*, 46 W. Va. 509 33 S. E. 281. True, the deed does reserve a life estate to Truman Gore, but this does not affect the character of the estate granted to Susan L. Gore; Truman Gore's life estate merely postpones the time that Susan L. Gore may take possession. Second, defendant's counsel say that the deed purports to grant not merely a remainder in the heirs of the body of Susan L. Gore, but makes a limitation over by way of a shifting, cross or alternative remainder to her brothers and sisters and their heirs, and that the remainder to the heirs of the body of Susan L. Gore, therefore, would not, with certainty,

take *effect in possession* upon her death, and the remainder is not solely to the heirs of the body of Susan L. Gore, as contemplated by the statute. We do not think this objection is well founded. Susan L. Gore's brothers and sisters take nothing by the deed unless she should die without heirs of her body. That provision in no wise affects the estate granted to her with remainder to the heirs of her body. In speaking of alternative remainders, 1 Minor on Real Property, Sec. 784, says: "Thus, in *Loddington* v. *Kime,* the limitation was to A for life, and if he have a son to that son in fee simple, and if he have no son then to B. in fee. It was held (1 Salk. 224) that both remainders were contingent until a son was born to A, when the remainder to A's son would vest, and B be excluded and his remainder destroyed; while if no son were born to A, B's remainder would vest upon A's death." So when Susan L. Gore died, the remainder vested in the heirs of her body; had she died without such heirs, the remainder would have vested in her brothers and sisters. And the fact that Susan L. Gore might have died before her father Truman Gore, thus terminating her life estate, so that the heirs of her body might not be let into immediate possession of the estate because of the life estate and possession of Truman Gore makes no difference. Our statute says nothing about possession. It operates merely upon the estate granted.

The case of *Carter* v. *Reserve Gas Company, supra,* relied upon by counsel for defendant is in full accord with this view. It would unduly prolong this discussion to analyze that case, but we have fully considered it, and find nothing therein which conflicts with our conclusions here. We therefore are of opinion that under the deed in the present case, Susan L. Gore took a life estate, in the 165 acres, and no more; that the heirs of her body, her two grand-children, Marshall W. Rust and Flora Shafter Matile, took an estate in remainder, which vested in them upon her death. It therefore follows that the plaintiff, Marshall W. Rust, has an undivided half interest in the coal in controversy unless he is estopped from asserting his title against the deed made by his grand-mother, Susan L. Smith, to Solomon D. Gore, dated September 1,

1883. It will be recalled that Susan L. Smith had but a life estate in the 165 acres. Her daughter, Flora Smith Rust Matile, plaintiff's mother, who joined with her in the deed to Solomon D. Gore, never had any vested interest in the lands, as she died before her mother. What she would have taken under the Truman Gore deed, had she outlived her mother, passed under that deed to her two children, Marshall W. Rust, the plaintiff, and Flora Shafter Matile.

Defendant pleads that plaintiff by his acts has confirmed the deed made by Susan L. Smith to Solomon D. Gore and that he is estopped from asserting title to the land conveyed by it. The claim is set up in various ways, but briefly:

1. By accepting the benefits of that conveyance.

2. By accepting and retaining the Virginia land after the release of the deed of trust thereon.

3. By accepting oil and gas rentals under the Clarksburg Light & Heat Company lease.

4. And that the right of indemnity under the agreement between Solomon D. Gore and Susan L. Smith, and under the deed of trust passed to the Coal Company and Clarksburg Light & Heat Company, as grantees of Solomon D. Gore, and the Gores had no right to accept a return of the consideration paid by Solomon D. Gore for the 165 acres nor to release the trust on the Virginia land without the consent of the Coal Company and the Light & Heat Company, except upon terms securing a confirmation of their title.

Let us briefly bring the more important facts before us. In 1883, Susan L. Smith, having a life estate only, conveyed the 165 acres in fee to Solomon D. Gore, by deed of general warranty. He was to pay $7000 for it. Under the preliminary contract the amount he was to pay was to be invested in land, which was to stand as a pledge or security to make good the title she conveyed to him. He then knew she alone could not convey good title. Her daughter, Flora Smith Rust, joined in the deed. He naturally supposed the daughter would outlive the mother. Had she done so, there would have been no difficulty. Of this $7000, he paid $5000, and gave vendor's lien notes for the balance. The $5000 was invested

in the Virginia land, a farm and a village lot. But Solomon
D. Gore was not satisfied with the mere investment of the
fund in the Virginia land. The land might be sold or en-
cumbered and his security lost. What did he do? He pro-
cured, through a friendly suit instituted by him in the Clarke
County, Virginia, Circuit Court, security in the form of a
deed of trust to the amount of $5000, the total amount paid
by him on the purchase price of the 165 acres, and in some
way not shown in the record, an understanding was arrived
at by which he was not required to pay the notes of $2000. He
probably did pay interest on them during the life of Susan
L. Smith; certain it is, however, that the notes were not paid
to her, nor did her executor ever receive any payment of
principal or interest. They were afterward surrendered
to Solomon D. Gore's executor. When the security which
Solomon D. Gore was to have in the land was converted into
a deed of trust on the land he accepted it and seemed satisfied
with it. He had a right to make that subsequent arrangement
and made it. His security was in the form of a lien on the
land, not the land itself, and amounted only to $5000. That
was the whole extent of his security, and it was all he was
entitled to, as that was all he paid. In 1892 he sold the Pitts-
burgh coal under the 165 acres to defendant,—conveyed it by
general warranty deed,—at the price of about $20.00 per acre.
The purchaser did not then look to the Virginia deed of
trust as security for its title, it accepted the Gore deed with
the covenant of general warranty in it. There is nothing in
the record showing that it then knew anything about the
Virginia deed of trust, or looked to that as security. In case
of failure of Gore's title, how was he to be repaid? He could
sell the Virginia land under the trust, and receive out of the
proceeds $5000, and no more. But suppose the owners of
the Virginia land could pay and desired to satisfy the trust
lien in that way? Could they not pay the $5000 and keep
the land? Most assuredly. It was a mere security for the
conditional payment of money and upon payment the bene-
ficiary would be bound to release the lien. Solomon D. Gore
had no interest, as we view it, in the equity of redemption;

his interest, by his own act, was converted into a mere money lien on the land to the amount of $5000, and when that was satisfied, his interest was determined.

Susan L. Smith died in 1907, leaving a will, by which she devised the Virginia farm to the plaintiff, encumbered by this deed of trust. By that will plaintiff got no more than the equity of redemption in the farm. The trust lien was then unsatisfied. He took possession of the land, as we think he had a right to do, and without prejudice to his claim against his land, which his grandmother had without right conveyed to Solomon D. Gore. He did not controvert the validity of the trust lien; on the other hand, he recognized it. He had a right to satisfy it and keep the Virginia farm. To whom should payment be made? The defendant Coal Company? It was not a party. The lien was in favor of Solomon D. Gore, and no one else. In 1913, plaintiff entered into an agreement with Solomon D. Gore's Executor and devisee by which the trust lien was satisfied. There was no fraud in this transaction; none is claimed. By this arrangement, he conveyed his half interest in the surface of the 165 acres to the Gores, and it was agreed that he should have 5/16ths of the proceeds of any oil or gas wells which might be drilled on the land and the Gores the residue, and that he should have a part of the delay well rentals paid under the Light & Heat Company's lease from April 25, 1911, and that might be paid thereafter thereunder so long as it stood on the 165 acre tract. The $2000 in notes executed by Solomon D. Gore to Susan L. Smith were surrendered to Gore's Executor; there is some evidence in the record that these were surrenderd when the Gores bought the Matile interest, but as we view it, it makes no difference whether they were surrendered in the one transaction or the other. The Gores executed a release of the trust lien on the Virginia land. As we view it, it makes no difference whether the lien was satisfied by money payment or by conveyance of the plaintiff's interest in the surface of the 165 acres. It was all one to both parties. The trust lien was satisfied, and damages accruing to the Gores from the defect in the title were paid. Under these circumstances, plaintiff

had a right to keep the Virginia farm without that act being construed as a confirmation by him of the deed of Susan L. Smith to Solomon D. Gore.

When we examine in detail the acts of the Gores in relation to the Matile interest and the Rust deed to the Gores, we find that the Gores distinctly recognized the title in Flora Shafter Matile and the plaintiff. ' She had the same interest that the plaintiff had; no more, no less. They paid her in cash $12,400 and released this same deed of trust on the Millwood house and lot which had been devised to her by her grand-mother, Susan L. Smith. They valued that house and lot at $600. They accepted a deed from her guardian for an undivided half of the 165 acres, under date of January 31, 1912. That same day the defendant Coal Company accepted from the Gores a deed for the undivided half of the Pittsburgh coal and mining rights in the land, with a recital therein that it was the same land which was conveyed to the grantors by Flora Shafter Matile's guardian, bearing date that day. By the deed of Rust to the Gores he conveyed to them his interest in the surface and all but 5/16ths of the oil and gas. By the same deed he reserved the 5/16ths of the oil and gas under the land. Where did he get it? Not from Solomon D. Gore or his devisees. They did not convey it to him. He already had it. so he reserved it in his deed. By accepting this deed with this reservation, they said he was to have it, and recognized his title to it. He also reserved the coal and other minerals, subject to the special provision for the oil and gas. They recognized his right to sue to recover the Pittsburgh coal which their father had conveyed away; that they might be compelled to refund to defendant the purchase money their father had received for it, and so required plaintiff, in such event, to repay them a part of that money.

But defendant says that under the arrangement between plaintiff and the Gores, plaintiff recognized and confirmed the Light & Heat Company's oil and gas lease by stipulating for the payment to him by the Gores of 5/16ths of 165/565ths of the rentals on the whole tract of 565 acres,

so long as the lease was in force on the 165 acres, and that by so doing he recognized the integrity of the title of Solomon D. Gore to the 165 acres, when he leased the land. It therefore says that he recognized the Gore title to the entire farm, Pittsburgh coal and all. We do not think so. But if he recognized the Gore title, they recognized his title, and the one offsets the other. It is well settled that ''an estoppel against an estoppel sets the matter at large.'' Bigelow on Estoppel, 6th ed. 392; 21 C. J. p. 1110, and authorities there cited. It must be remembered that this arrangement between plaintiff and the Gores was an adjustment of their claims, a compromise, defendant calls it, and probably that term is correct. Whatever it was, under the circumstances, we do not see that plaintiff thereby confirmed the original deed to Solomon D. Gore, but rather the contrary is shown. It rather shows a disaffirmance on his part and a recognition by the Gores that it was invalid and not binding on Rust, and we do not think defendant in this respect stands on any higher ground than they. If they could not claim it to be a confirmation of the title in their father, neither can his alienee.

And now as to the right of the Gores to release the deed of trust without the consent of defendant: If the Gores were insolvent, defendant might have just ground of complaint. But they are not. They own the surface in 565 acres of land, worth many times the purchase price paid by defendant for the half of the Pittsburgh coal, claimed by plaintiff. They are amply able to respond in damages for failure of its title to that half interest. But defendant does not want damages, measured by the purchase price; it wants the coal. If it is made whole, it can not complain. It has not opened any mine on the premises and its position has not been changed in any particular by reason of any act of the plaintiff or the Gores. Under the circumstances, we think the Gores had a right to release the trust and to make the adjustment with plaintiff which they did make. To deny plaintiff his legal estate to the coal in controversy would, to our minds, be plainly inequitable. He has an undivided half and is entitled to the partition prayed for in his bill, if partition can be had; if it can

not be had in kind, then he may be entitled to a partition by way of sale and division of the proceeds, upon a proper showing.

For the foregoing reasons the decree complained of will be reversed and the cause remanded.

*Reversed and remanded.*