**Richmond.**

SEIBEL AND AL. V. RAPP AND ALS.

May 10th, 1888.

Absent, *Richardson*, J.

1. DEEDS—*Support of mother and children—Construction—Partition—Case here.*—Land was conveyed in trust to permit mother during her life to possess and enjoy it and its income for support of herself and her children. During her life the children brought suit to partition the land or to divide the proceeds.

HELD:

> During her life she was the sole owner of the property ; the children had no interest in it, and therefore it was not subject to partition.

2. IDEM—*Execution and acknowledgment—Subsequent mutilation—Case here.*—Deed of property in trust for wife is signed and acknowledged by both grantor and trustee ; after grantor's decease it was found among his papers, or rather was produced by his wife, in a mutilated and canceled condition.

HELD:

> It was not in grantor's power to revoke the deed after he had signed, sealed and acknowledged it in due form, and procured the trustee's acceptance in the same way.

Appeal from decree of corporation court of city of Norfolk, rendered 21st June, 1887. The bill was by two of the children of Henry Seibel, deceased, against their mother, Mary, and Frederick W. Rapp, her husband, and their brother, Philip Seibel, and his wife, Ellen, to have partition, or for sale and distribution of the proceeds among those entitled, of certain real estate, which belonged to Henry Seibel, deceased. The real estate thus drawn in question was conveyed, except the lot " No. 73 Cone

street," by Henry Seibel and Mary, his wife, on the 19th of December, 1868, to O'Keef, trustee, upon certain trusts—(1) For the benefit of the grantor, Henry Seibel, during his life. "(2) And upon the further trust that after the death of the said Henry Seibel the said Mathew O'Keef shall permit the said Mary Seibel, should she survive him, the said Henry Seibel, to occupy, possess and enjoy the said four several tracts or parcels of land, and the rents, issues, and profits thereof, to take for and during the term of her natural life for her support and sustenance of her children which she now and may have by her said husband, free and clear of and from all manner of charge and incumbrance of any husband she may hereafter take." (3) For the benefit of the children in manner stated after the death of their mother. The bill was answered by the mother. She set up that the land conveyed in the said deed of December 19, 1868, was not liable to partition or division during her life under the terms of the deed, the whole belonging to her during her life; and produced another deed by which the "lot No. 73 Cone street" was conveyed to a trustee for her benefit. But the signatures of the grantor and the grantee—the trustee—having been cut from the deed, the plaintiffs insisted that it had been canceled by the grantor in his life-time, and was of no effect to pass any estate, and the defendant, Mary Rapp, then filed her cross-bill, setting up her claims under the last-mentioned deed conveying "lot No. 73 Cone street" to a trustee, which was dated February 25, 1878, and acknowledged before a notary by both the grantor and grantee on the 28th of February, 1878. At the hearing the corporation court held—(1) That according to the true construction of the deed from Henry Seibel and wife to Mathew O'Keef, trustee, dated the 19th day of December, 1868, the grantor's then wife, the present Mary Rapp, is entitled to the entire income from the property in said deed conveyed for and during her natural life, and not to an interest in said income jointly with her children, as contended for by the plaintiff; and therefore the property in said deed conveyed is not the subject for

partition, as prayed for in the bill, during the life of said Mary
Rapp.   (2) The court being of opinion that the deed from
Henry Seibel to Richard Walke, trustee, dated February 25,
1878, filed with the cross-bill of said Mary Rapp, and referred
to in the .cause as the "mutilated deed," was duly executed,
acknowledged, and delivered, and that the same was mutilated
after such execution and delivery, and sustained the deed.   The
plaintiffs thereupon applied for and obtained an appeal to this
court.

*Harmanson & Heath*, for the appellants.

*White & Garnet,* for the appellees.

LACY, J. (after having stated the facts as aforesaid), delivered
the opinion of the court.

The first assignment of error is as to the action of the corpo-
ration court in its construction of the deed of December 19, 1868,
that the same was not the subject of partition, the wife being,
during her life, entitled to the whole income from the same.
We think the decision of the corporation court upon this deed
was in accordance with a long line of decisions in this court,
which cannot now be questioned here.   From the case of *Wallace*
v. *Dold,* 3 Leigh, marg. p. 258, it has been held—with some
respectable dissent at first—that the gift to the wife and her
child was a gift to the wife.   The reference to the children indi-
cated the motive for the gift *(Stinson* v. *Day,* 1 Rob. (Va.) 436 ;
*Leake* v. *Benson,* 29 Gratt. 153 ; *Bain* v. *Buff,* 76 Va. 371 ;
*Mauzy* v. *Mauzy,* 79 Va. 539 ; *Waller* v. *Catlett,* 83 Va. 200),
and we think there is no error in the decree complained of on
this point.

The second assignment of error is as to the action of the cor-
poration court in sustaining the "mutilated deed."   As to this
alteration of this deed, by which it was defaced, it will be con-

ceded, after the complete execution of the deed, the erasure or defacement could have no effect to divest the estate. 2 Minor, Inst. 663. In this case it is evident upon the face of the mutilated paper that the mutilation, by cutting off the names of the grantor and grantee, was done after the signing and acknowledgment by both the grantor and grantee, such being made plain by the notary's certificate. The possession of the deed never passed out of the grantor, so far as the record shows. It was found among his papers after his death and produced by his wife, who does not account for the mutilation; and it is proved in the cause that it was duly signed, both by the grantor and grantee, and duly acknowledged as to both. There is no further proof of delivery than such inference as may be drawn from these circumstances. We do not find this precise question determined in any case to which we have been cited, or to which we have looked, in this State. If these circumstances had been found without the mutilation, then delivery might have been presumed. *Ward v. Lewis*, 4 Pick 520. Possession of a complete and perfect deed by the party claiming under it, is *prima facie* evidence of delivery, and, under ordinary circumstances, no other proof would be required. *Games v. Stiles*, 14 Pet. 322. The general principle of the law is that the formal act of signing, sealing, and delivery is the perfection and consummation of the deed, and it lies clearly with the grantor to prove that the appearances are not consistent with the truth. The presumption is against him, and the task is upon him to destroy that presumption by positive proof that there was no delivery, and that it was so understood at the time. Chancellor Kent in *Souverbye v. Arden*, 1 Johns. Ch. 240. "A voluntary settlement fairly made is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted, nor intended to part, with the possession of the deed; and, even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances beside the mere fact of his retaining it to show that it was not intended to be absolute."

*Bunn* v. *Winthrop,* Id. 329 ; Chancellor Kent saying in that case: "The instrument is good as a voluntary settlement, although retained by the grantor in his possession until his death. There was no act of his, either at the time or subsequent to the execution of the deed, which denoted an intention contrary to that appearing upon the face of the deed." And so, also, in the case of *Scrugham* v. *Wood,* 15 Wend. 545, it was said : "Where a deed of lands is prepared for execution, read, signed by both, and acknowledged as their deed before an officer authorized to take acknowledgments, it is a complete and valid deed, notwithstanding the witnesses present at its execution unite in testifying that there was no formal delivery of it, and the deed after the death of the grantor is found in his secretary among his private papers." None of these cases can be said to be in point, because in the case at bar the deed was not retained in the possession of the grantor, but was found among his papers, or rather was produced by the defendant in a mutilated and canceled form, with the signatures cut off. I think, there being no proof of when or how this cancellation was effected, and no explanation given of it, the presumption is that the grantor canceled and sought to revoke the deed. And the question here is, what effect did this have upon the rights of the parties concerned? Was it in the power of the grantor to revoke the deed after he had formally signed, sealed, and acknowledged it in due form, and procured the acceptance of the trustee in the same formal way? In the case of *Graysons* v. *Richards,* 10 Leigh, 61, it is said : "When a father by deed of gift conveys land to a son, and shortly after the son voluntarily surrenders the deed to the father to be canceled, with the design to divest the title out of himself, and restore it to the father, and the deed is canceled, it was held by this court that the son's title was not divested by the cancellation of the deed, and the lands shall be charged in equity with the debts of the son." In the case of *Farrar* v. *Bridges,* 5 Humph. 411, it was said : "If nothing remains to be performed in order to give effect to the

instrument, its signing, sealing, and attestation as a valid instrument between the parties will make it complete and effectual, although the instrument may be left in the possession of the bargainor or grantor." See *Garnons* v. *Knight,* 11 E. C. L. 632 ; *Clavering* v. *Clavering,* 2 Vern. 473 ; *Naldred* v. *Gilham,* 1 P. Wms. 577. In that case the deed was executed, kept in possession (surreptitiously copied), burned, and a new settlement made. The copy was set up by Sir Joseph Jekel as against the subsequent settlement. The case of *Hutchison* v. *Rust,* 2 Gratt. 395, is cited as sustaining the contrary doctrine, but an examination of that case, with the arguments of counsel quite fully reported—there was no opinion in this court—shows that the deed was never intended to take effect until a bond had been executed by the beneficiaries, which was never done, and the deed burned.

Upon all the authorities, and upon reason, we are of opinion that there is no error in the decree appealed from under this, the second assignment of error. We are therefore of opinion to affirm the said decree.

DECREE AFFIRMED.