# CHARLESTON.

Furguson *v.* Bond, *et al.*

Submitted June 11, 1894.—Decided December 1, 1894.

| | |
|---|---|
| 39 | 561 |
| 39 | 625 |
| 39 | 561 |
| 44 | 625 |
| 39 | 561 |
| 46 | 777 |
| 39 | 561 |
| 49 | 295 |
| 39 | 561 |
| f65 | 402 |
| f65 | 609 |

1. DEED—MORTGAGE.

   A deed absolute on its face *held* to be an equitable mortgage.

2. DEED—DELIVERY.

   The date of a deed is *prima facie* the date of delivery, but only *prima facie.*

3. DEED—DELIVERY.

   Delivery of a deed depends on intent of parties, and, though not in formal words, may be shown by circumstances.

4. DEED—DELIVERY.

   Acknowledgment of a deed is not conclusive evidence of its delivery, but a circumstance tending to show delivery.

5. DEED—DELIVERY.

   Where it is clear a deed has been delivered, it is still a deed, though afterwards found in the possession of the grantor.

6. DEED—DELIVERY.

   Where a deed has been once completed by delivery, so as to pass title to land, its subsequent oral cancellation or destruction, though by consent of both parties, does not divest the grantor of title, but it still remains in him.

M. K. Duty and J. G. McClure for appellants, cited 4 Rand. 282; 2 Pom. Eq. § 968; Kerr Fr. 382; 2 Munf. 310; 2 Dan. Pl. and Pr. 850, 856; 24 Miss. 80; 34 Miss. 597; 1 Cow. 691–703; Sto. Eq. Pl. (9th ed.) § 12, 13; 17 W. Va. 717; Code, c. 125, s. 59; 22 W. Va. 356, 357, 365, 366; 5 Am. & Eng. Ency. L. 440–445 § 23.

J. V. Blair for appellees, cited Code, c. 135, s. 1, cl. 7; 27 W. Va. 215; 29 W. Va. 673; 15 W. Va. 64 and 79; 25 W. Va. 590; 37 W. Va. 725; 22 W. Va. 356–365, p't 4, Syll; 17 W. Va. 717; 18 S. E. Rep. 451; 37 W. Va. 3, 675 and 687; 36 W. Va. 391; 29 W. Va. 703; 22 W. Va. 585; Id. 2; 16 W. Va. 443; 12 W. Va. 247.

BRANNON, PRESIDENT:

This is a suit in equity in Tyler county brought by William T. Ferguson against Israel Bond and others to subject certain land to a judgment recovered by Ferguson against Israel Bond, and to set aside as fraudulent a deed from Israel Bond to Margaret Bond, conveying said land. The decree holds the land liable to the judgment, and the defendants appeal.

Is the deed from Israel Bond to his mother, Margaret Bond, fraudulent? It is dated February 8, 1881, acknowledged February 10, 1881, but not recorded till July 31, 1888. If the deed was perfected by delivery on the 8th or 10th of February, 1881, we could not hold it void, because there is no appearance whatever that it wronged, or was intended to wrong, any one whatever, as it states the consideration of its conveyance to be fifty dollars cash, and binds the grantee to pay a note made by Israel Bond to Ankrum's administrator of five hundred and seventeen dollars and thirty two cents. Israel Bond owed no other debt. Thus we can not say he intended to defraud existing creditors. Nor can we say he intended to defraud future creditors, for it does not appear that he contracted any other debt.

The judgment of Ferguson against Israel Bond was recovered August 23, 1889, for the seduction of Ferguson's daughter in 1888, and it appears that Israel Bond did not even know the girl until long after he made the deed. What, then, was the real nature and motive of this deed? It conveys from Israel to his mother, Margaret Bond, all his personal property and his land. Israel Bond was a single man, then forty two years of age, living on the land with his mother, an aged lady, who drew a pension as widow of a soldier of the war of 1812. She had money. The debt Israel owed was demanded of him. If the land were conveyed to her, and she thereby made liable for the debt, the creditor would indulge. She had means to pay, which could be relied on, and he would be secure. She did from time to time pay it off. But, with the Circuit judge, I think it was, though in form an absolute conveyance, really intended as an indemnity to the

mother for money she should pay for him; that is, an equitable mortgage. Why this conclusion? The relation of the parties was that of mother and son. The land, outside the personalty, was worth about three thousand dollars, while the balance of the Ankrum debt was not more then than five hundred dollars, and the cash payment was fifty dollars; the consideration being thus greatly inadaquate, repelling the idea of a sale. It is not to be supposed that a son in the prime of life intended to convey to his very aged mother, at one sixth of its value, property for her benefit, when the sacrifice would redound only to the benefit of her other children. Again, she did not record the deed for more than six years. If it was an absolute conveyance is it not probable that she would have sooner recorded it? Indeed we can not say she ever recorded it, as it was sent by mail to the clerk, with a letter signed by her, asking its recordation, but written by the son. This did not take place until one week after service on Israel Bond of the writ of Ferguson in the suit for seduction of his daughter. We may say it never would have seen the record but for this suit. Again, Israel remained in possession of the land, after the conveyance, using it as he had always done, at least without signal outward change in management, and the land and personalty remained on tax-books in his name until 1889. Again, she signed and acknowledged a deed in the spring or summer of 1888 re-conveying the land to Israel Bond. This shows either that she had never paid the debt—as seems probable from Israel's deposition. "We paid the most of it in December, 1892; * * * that when the note was paid off was the amount she paid or I paid for her"—or, if she paid it, that he repaid it, or she forgave it, since it is hardly probable she would reconvey, to the prejudice of other children, so valuable a property, if she did not consider that she held it only as a security. Again, she made a will March 7, 1889, giving Israel all her personalty, but no realty, being silent as to realty. If she owned the realty, why was the will silent as to it? She stated to the draughtsman at the time when he talked about her realty, that she had already conveyed it to Israel. She frequently had at other times re-

ferred in conversation with Hardman to the farm as Israel's and said she was simply making her home with him. Again, after the judgment for seduction. against her son, she made another will, dated October 16, 1889, and died shortly after, giving another son, Isaiah M. Bond, her personal and real property, appointing Israel her executor, directing him to hold the realty "until he deems best to sell and pay to my son in installments of one, two and three years," without bond from the executor; thus giving him a life-estate, and perhaps freedom from liability, showing she regarded him as really the owner. He is still in possession.

These circumstances lead to the conclusion, not that the deed when made was fraudulent, but was an equitable mortgage. I shall not go over again principles already elaborately laid down by this Court by which we test whether a conveyance absolute on its face is an equitable mortgage, but simply say that upon those principles the circumstances surrounding this transaction will sustain the holding, that in truth this conveyance was an equitable mortgage. If there were doubts, we should have to lean in favor of such mortgage. *Vangilder* v. *Hoffman*, 22 W. Va. 2; *Gilchrist* v. *Beswick*, 33 W. Va. 168 (10 S. E. Rep. 371).

Then, if Mrs. Bond was such mortgagee, ought not her estate have been accorded preference for what she paid? No; not because her conveyance from Israel was fraudulent, but because of her re-conveyance of the land to Israel. A question is made in the case whether this deed of February 8, 1881, was ever delivered until July 31, 1888, when it was recorded, and that it then, and not until then, became a deed and was a fraudulent instrument to defeat the coming recovery in Ferguson's action. Until another date of delivery is proven, the presumption as to date is, that the delivery was on the date of the deed. *Harvey* v. *Alexander*, 1 Rand. (Va.) 219, 241; *Harman* v. *Oberdorfer*, 33 Gratt. 497; 2 Greenl. Ev. § 297. Still, the fact of delivery as an element of a deed must appear. Mere acknowledgment is no proof of it. *Hutchison* v. *Rust*, 2 Gratt. 394. Recordation at the instance of grantee is *pri-*

*ma facie* evidence of delivery. Acceptance is still a distinct matter and essential. But in this case we must find that the deed was delivered, because Israel Bond swears pointedly that he delivered it at its date. Mrs. Bond sends it to the clerk for record and she re-conveyed the land to Israel Bond.

It is urged in argument that, if we treat this conveyance as only an equitable mortgage, there can be no decree against the land, inasmuch as the bill charges a fraudulent conveyance not a mortgage, and so there is no pleading to base a decree upon on the equitable mortgage theory. It is useless to discuss this matter, seeing that by re-conveyance of the land by Margaret to Israel Bond it became his absolutely; and I take it as clear, that the judgment-lien can be enforced whether on the basis of fraudulent conveyance or that the land is Isreal's, though the bill proceeds on the theory of fraudulent conveyance; for in the one case the land would be Israel's *quoad* his debt and in the other absolutely his, and the bill demands payment from the land. A deed of re-conveyance was surely signed and acknowledged by Mrs. Bond. She told Sheriff Hardman of it. Isreal Bond says that he wrote and she acknowledged it. But then here a question arises as to the delivery of this deed also. Mere acknowledgment is not conclusive of delivery, to be sure; yet it is a circumstance of much weight along with others. *Hutchison* v. *Rust*, 2 Gratt. 394. We must determine upon all the circumstances the intention of the parties, as there surely need not be—as there surely is not in one case in a hundred—express formal delivery in words. What was the intention of the parties? Israel Bond says he wrote the deed. What for? The mother signed and acknowledged. For what purpose? Israel saw the deed after acknowledgment. He had it in his possession. For what purpose? How came it in his possession, if not because it was his deed? When asked where he put the deed, he does not remember, but says, if he put it anywhere, he put it in his mother's papers. They probably kept their papers irregularly together. That amounts to nothing. The only reason it was among her papers was that he put it there, though complete. He did not disavow

the deed. In addition, the mother told Hardman she had re-conveyed. The parties intended to make—did make—a complete deed. There can be no doubt but this case comes up to the standard of *Scrugham* v. *Wood*, 15 Wend. 545, (30 Am. Dec. 75, and note) holding that where parties meet, read, sign and acknowledge before an officer a deed, it is sufficient evidence of delivery, though the witnesses can not state a formal delivery, and though the deed be afterwards found in the possession of grantor. 4 Kent Comm. 455; 2 Greenl. Ev. § 297; *Hutchison* v. *Rust*, 2 Gratt. 394; 2 Minor, Inst. § 657; *Seibel* v. *Rapp*, 85 Va. 28 (6 S. E. Rep. 478.)

But Israel Bond says that one time, when sitting by the fire, the mother threw something in the fire, and when he asked what it was she said it was that deed; that he would never pay her for the land the way he was doing, or something to that effect. This was in May or June, 1889. This was pending Ferguson's action, and before judgment. The story does not look very plausible. What the old lady said did not import non-delivery. Before that she admitted the deed to Hardman. There was now pressing need to destroy the deed; certainly on Israel's part, and likely on her part, if she did the burning. So we may attribute the action to fraudulent destruction, taking place when it did. The deed being a perfect deed passing title, the conjoint act of both in destroying it could not divest Israel of the land, or remove it from liability to the judgment; much less her sole act, as he did not assent to it. Code, c. 71, § 1, required a deed or will to re-vest the title. It remained in him, when the judgment-lien attached to it. *Graysons* v. *Richards*, 10 Leigh 61; *Seibel* v. *Rapp*, 85 Va. 28 (6 S. E. Rep. 478); 1 Minor Inst. 666. Thus Margaret Bond had nothing in the land to pass by her will. So by force of this re-conveyance the land was properly held liable; and the decree is affirmed.