IRENE CALES *v.* DORA FORD *et al.*

(No. 9462)

Submitted September 21, 1943. Decided November 2, 1943.

KENNA, JUDGE, dissenting.

*J. Raymond Gordon,* for appellant.
*T. L. Read,* for appellees.

Fox, Judge:

On the 21st day of July, 1939, R. H. Ford and Dora Ford, his wife, executed three separate deeds, each making certain reservations and provisions for the support of various parties named therein, and each differing from the others in some respects. In one deed Mark Addison Ford is named as party of the second part, and Elmer and John Ford as parties of the third part. This deed conveys unto the party of the second part a tract, the acreage of which is not stated, but treated in the record as containing one hundred fifty-four acres, situated in Green Sulphur District of Summers County, and, following the granting clause therein, contains the following provisions:

> "TO HAVE AND TO HOLD all said lands unto said party of the second part in fee simple forever with general warranty of title; with the following conditions and reservations; that is said parties of the first part are to have a lifetime support and maintenance out of this tract of land; and also maintenance and support of said parties of the third part, namely Elmer Ford and John Ford; with the right to live thereon and be supported out of the same for and during their natural lives.
>
> "It is further provided and hereby made a part of the consideration herein, that in case said Mark Addison Ford should die without · issue of the body, then in that case this deed only conveyed to him a life estate during his natural life, and the remainder in fee after his death is hereby sold and conveyed to Walter H. Ford in fee simple forever, to assume and carry out all the provisions of this deed made to said Mark Addison Ford."

It will be noted that the name of Walter H. Ford does not appear as a party in the caption of the deed, but, in view of the conveyance hereafter mentioned, this omission is not important, even if any importance should be attached thereto in the absence of such reconveyance.

In another deed, bearing same date, in the caption of the deed, R. H. Ford, and Dora Ford, his wife, are named as parties, presumably as parties of the first part, although not expressly stated to be such; Mark Addison Ford is named as party of the second part; Elmer Ford and John Ford as parties of the third part; and Dora Ford, W. H. Ford and Frank Bragg, as trustees, parties of the fourth part. By this deed there is conveyed unto the party of the second part, a tract of forty-four acres and sixty-five poles situated in Summers County, which deed contains the following provisions:

> "TO HAVE AND TO HOLD all said lands unto the said party of the second part in fee *simplir* forever with the following reservation and condition—that said parties of the first part are to have a life time support and maintenance out of this tract and said parties of the third part Elmer Ford and John Ford are to likewise have their lifetime support and maintenance out of same for and during their natural lives; and it is further agreed and provided that in case said party of the second part, Mark Addison Ford, should die without issue of the body, then in that case this deed only conveys to him a life estate during his natural life and the remainder in fee after said life estate is hereby sold and conveyed to Walter H. Ford in fee simple forever to assume and carry out all the provisions of this deed made to Mark Addison Ford."

Nothing appears in the deed affecting in any way Dora Ford, W. H. Ford and Frank Bragg as trustees.

In still another deed, bearing the same date, R. H. Ford and Dora Ford are named as parties of the first part, and Mark Addison Ford as party of the second part, and there is conveyed to him a tract of one hundred forty-eight acres of land, more or less, situated on the waters of Laurel Creek in Summers County, which deed contains the following reservation:

> "TO HAVE AND TO HOLD all said property unto said party of the second part in fee simple

forever; and said parties of the first part hereby warrant generally the title to all the property herein conveyed with the condition that said parties of the first part hereby reserve a life time support out of said lands for and during the natural lives of both parties of the first part; and said party of the second part to take all said lands remainder in fee simple forever."

On the 3d day of August, 1939, Mark Addison Ford and Louise Ford, his wife, and Walter H. Ford and Lula Ford, his wife, in consideration of five dollars paid, granted and conveyed to R. H. Ford all their right, title and interest in lands described as follows:

"FIRST: A certain tract of land lying in Green Sulphur District of Summers County, West Virginia, and which said land is more fully described in a Deed from R. H. Ford and Dora Ford his wife, to Mark Addison Ford and others by Deed dated July 21st, 1939, and recorded in the office of the County Court of Summers County, West Virginia, in Deed Book 70, at page 166.

"SECOND: A certain tract or parcel of land situate as aforesaid, containing forty-four (44) acres and sixty-five (65) poles, more or less, and being the same land conveyed by R. H. Ford and wife to Mark Addison Ford and others by deed dated July 21, 1939, which said deed is recorded in the aforesaid Clerk's Office in Deed Book 70 at page 167."

To this conveyance was added the following:

"It being the intention of this deed to re-convey unto the said R. H. Ford the lands therein described. Reference to the aforesaid two deeds is here had for a more complete description to the lands herein conveyed."

All of these deeds were recorded in the office of the Clerk of the County Court of Summers County; the last mentioned deed was recorded on the 21st day of October,

1940, subsequent to the death of R. H. Ford, which occurred on the 7th day of October, 1940.

R. H. Ford died intestate leaving surviving him Dora Ford, his widow, and Irene Cales, the plaintiff herein, Alleva Bragg, Ella Fox, Johnsie Wheeler, Elmer Ford, John Ford, Walter H. Ford and Mark Addison Ford, his only children and heirs at law.

At October Rules, 1941, Irene Cales instituted this suit against the widow and other heirs of the said R. H. Ford, in which she sought a partition of the real estate of which the said R. H. Ford died seized and possessed, and alleged in her bill that said land consisted of tracts of one hundred·fifty-four acres and forty-four acres and sixty-five poles, described as same land conveyed to the said R. H. Ford by Mark Addison Ford by deed dated August 3, 1939, recorded in the office of the Clerk of the County Court of Summers County in Deed Book No. 71, at page 349, and avers that she is entitled to an undivided one-eighth interest therein. She does not allege any interest in the tract of one hundred forty-eight acres of land hereinbefore mentioned. The dower interest of Dora Ford as widow of R. H. Ford in the two tracts first above mentioned is admitted in the bill, and the prayer is that the said lands be partitioned or sold subject to such dower.

At September Rules, 1943, Dora Ford, widow of R. H. Ford, deceased, and John Ford and Elmer Ford, filed their joint answer to the plaintiff's bill of complaint. In that answer Dora Ford sets up the two conveyances made by R. H. Ford and wife to Mark Addison Ford, conveying the two tracts of one hundred fifty-four acres and forty-four acres and sixty-five poles, and alleges that under said conveyances "she was conveyed a lifetime support and maintenance out of the 154 acres, more or less, and also out of the tract of 44 acres and 65 poles, and that the subsequent deed, to-wit, the deed of August 3rd, 1940, recorded in Deed Book No. 71, page 349, in the office of the Clerk of the County Court of Summers County, West Virginia, did not in any way limit or extinguish her rights

in the entire tract known as the homeplace, containing 154 acres, and also the tract of 44 acres and 65 poles, and that she still has the right of lifetime support and maintenance out of the said tracts of land, and that as such, the prayers of the Plaintiff could not divest such rights as were conveyed to her in the deed dated 21st day of July, 1939, and of record in the Office of the Clerk of the County Court of Summers County, West Virginia, in Deed Book No. 70, at pages 166 and 167,". She also averred that she had not relinquished any of her rights as conveyed and granted to her in said deed, and that it was her desire to have her rights protected and reserved to her as therein set forth.

The defendants, Elmer Ford and John Ford, made the same contention with respect to their rights of maintenance and support from the same two tracts of land, and asked the court to preserve unto them all their rights and interest granted to them by their father, R. H. Ford, as set forth in said deeds.

In a special replication to this answer, the plaintiff denied that the two deeds dated July 21, 1939, aforesaid, are valid, legal instruments; and it is averred that they were null and void at law for reasons of uncertainty of the estate created, and that they attempted to create an estate not recognized by law. The special replication further avers that, as to said conveyances, no consideration passed from the grantees, Elmer Ford and John Ford, unto the grantors, and that said deeds are null and void as to the said Elmer Ford and John Ford. It is further averred that R. H. Ford died seized and possessed of the property mentioned in her bill of complaint, and the same is subject to partition.

On September 23, 1941, the suit was submitted upon plaintiff's bill, the answer of the defendants Dora Ford, John Ford and Elmer Ford, and plaintiff's special replication. On May 12, 1942, the court entered a decree which reads as follows:

"This cause came on to be heard this the 12th day of May, 1942, upon the Plaintiff's Bill duly filed, and service had upon all of the Defendants, upon the answer of Dora Ford, widow of R. H. Ford, deceased, John Ford and Elmer Ford, Defendants, and upon the special replication to said answer by the Plaintiff, and was argued by counsel, and the court taking time to consider the matters set forth in said proceedings, is of the opinion to and doth adjudge that the rights and interests of the said Defendants, Dora Ford, Elmer Ford and John Ford, as set forth in a deed bearing date the 21st day of July, 1939, between R. H. Ford and Dora Ford, his wife, parties of the first part, Mark Addison Ford, party of the second part, and Elmer and John Ford, parties of the third part, is a good and sufficient deed, and that the said deed vests a life estate in the said Dora Ford, and after said life estate, a maintenance and support and use in a tract of 154 acres, and a tract of 44 acres and 65 poles for and during the natural life of the said Elmer and John Ford, together with their right to live thereon and be supported off of the same for and during their natural lives, and that their said rights shall be protected in the settlement of the estate of the said R. H. Ford, deceased.

"And it is further adjudged by the Court that the remainder after the life estate of the said Dora Ford, John Ford and Elmer Ford, and the rights given them under said deed, shall be vested in the legal heirs of R. H. Ford, deceased."

Subsequent to the entry of this decree, on May 25, 1942, and presumably at the same term of court, plaintiff appeared and moved the court to set aside the decree of May 12, 1942, on the ground that "the case was improperly developed, and that important phases of it were not called to the Court's attention;" which motion the court overruled. Thereupon the plaintiff tendered her amended bill of complaint and asked leave to file the same. The court, having inspected the amended bill, refused to permit the same to be filed, but identified and lodged the same with

the papers of the cause, to which rulings of the court the plaintiff excepted.

The amended bill sets up the conveyance of the two tracts of one hundred fifty-four acres and forty-four acres and sixty-five poles, referred to in the plaintiff's original bill, and sets up the conveyance of one hundred forty acres of land by R. H. Ford and wife to Mark Addison Ford by deed dated July 21, 1939, recorded in Deed Book No. 70, at page 166, which is evidently the one hundred forty-eight acre tract hereinbefore mentioned. The amended bill then avers that the three conveyances first mentioned herein, were made as part and parcel of an agreement and contract, whereby Mark Addison Ford agreed and contracted with R. H. Ford and Dora Ford, that in consideration of said conveyances, which represent a conveyance of all of the real estate owned by R. H. Ford, together with certain personal property, the said Mark Addison Ford would maintain and support R. H. Ford and Dora Ford during their natural life, and provide them with medical attention, food and clothing, and give both a decent burial; that at that time R. H. Ford was well advanced in years, sick in body and mind, worried about business affairs, and as a result thereof made the agreement and conveyances aforesaid; that shortly after such conveyances, R. H. Ford became dissatisfied, and learned that the said Mark Addison Ford did not intend to support and maintain him; that on August 3, 1939, R. H. Ford demanded of Mark Addison Ford and Walter H. Ford that said tracts of land be reconveyed to him, and the agreement for support and maintenance ended; that the said Mark Addison Ford and Walter H. Ford agreed thereto, and did reconvey two of said tracts of land, but failed to reconvey the third tract, which is the tract referred to as one hundred forty acres or one hundred forty-eight acres. The effect of the amended bill is to assert plaintiff's interest in all three of said tracts of land. The deeds therefor by R. H. Fork to Mark Addison Ford are alleged to constitute

clouds upon the title to the premises, and are asked to be cancelled. She also asks that the contract for maintenance be declared invalid. The amended bill also contains an allegation that Mark Addison Ford never at any time gave any support to either R. H. Ford or Dora Ford, his wife.

On this record, and on the application of the plaintiff we granted this appeal.

The first question to be considered is the effect to be given to the conveyances by R. H. Ford and Dora Ford, his wife, of the tracts of one hundred fifty-four acres and forty-four acres and sixty-five poles, to Mark Addison Ford, and conditionally, to Walter H. Ford, and their subsequent reconveyance to the grantor, R. H. Ford. The court below treated the reconveyance as having no effect on the rights of Dora Ford, the widow of R. H. Ford, or his two sons, whose support was provided for in the original conveyances. We assume that this holding was made on the principle that these persons held certain rights under the original conveyances, and that, in the absence of consent thereto on their part, no act of R. H. Ford, or his grantees could deprive them of such rights. Under ordinary conditions, where rights have become vested, something in the nature of a trust would be created, and the position taken would be unassailable. *Johnson's Admr. v. Billups*, 23 W. Va. 685, 26 R. C. L. 1207. However, to invoke this rule, we do not have to say that a trust was created by R. H. Ford in favor of his wife and two sons. If an irrevocable right became vested in the wife and sons, there would be no escape from the conclusion that it could only be terminated with the consent of the beneficiaries. But we do not think a trust or an irrevocable right of any character was created by said deeds. At most only a charge on the land was established, and even this, in circumstances involving the selection of persons to carry out a particular purpose of the grantor, and involving personal confidence on the part of the grantor in those he selected. There is nothing in said deeds indi-

cating that the grantor ever intended to create a charge on the land he conveyed, separate and distinct from the requirement he made of his grantees that they, or one of them, support his wife and two sons on the land he was. conveying. This is not a case where land is charged with the support of third parties, independent of all other considerations.

In these circumstances the plan R. H. Ford had worked out for the care and support of his wife and sons broke down. We think it may be safely assumed, either that the grantor became dissatisfied with his plan, or that the grantees, Mark Addison Ford and Walter H. Ford did not wish to assume the burden imposed by the said conveyances. At any rate, within fifteen days from the date of the original conveyances, two of the tracts, and the only two in which Walter H. Ford was interested, were reconveyed to R. H. Ford, and as between the parties to this reconveyance, and, as to the two tracts reconveyed, it may be treated as a voluntary rescission of any existing agreement between them touching the care and support of the wife and sons of R. H. Ford. For the purposes of this case, it is assumed that the deed of reconveyance was delivered to R. H. Ford, although it was not recorded until after his death. There being no reconveyance of the one hundred forty-eight acres, the rights of the widow of R. H. Ford to support therefrom remain unimpaired, unless, as set up in the amended bill, tendered but not filed, a reconveyance of that tract should be decreed. In that event the rights of the widow as to all of the lands herein involved would be governed by the same principles.

The controlling question is: Did the reconveyance of the two tracts of land to R. H. Ford destroy any rights which the wife (now widow), and two sons named above, might otherwise be entitled to assert against said lands; or, are they still entitled to enforce such rights as against such lands.

Conveyances such as those made by R. H. Ford are not strangers to the law. From time immemorial men well ad-

vanced in years have sought to select the means and methods by which they attempt to provide for the care of those in whom they have a special interest, such as a widow, invalid or unfortunate children, or in other peculiar circumstances. The policy of the law has been to uphold such conveyances, and especially to require reasonably strict compliance with any undertaking a grantee may make in respect thereto. Equity has never hesitated to cancel conveyances of this character where the grantee has failed to meet his obligations thereunder, as the following cases will attest: *Pownal* v. *Taylor,* 10 Leigh 172; *Lowman* v. *Crawford,* 99 Va. 688, 40 S. E. 17; *Wilfong* v. *Johnson,* 41 W. Va. 283, 23 S. E. 730; *Farnsworth* v. *Noffsinger,* 46 W. Va. 410, 33 S. E. 246; *Goldsmith* v. *Goldsmith,* 46 W. Va. 426, 33 S. E. 266; *Fluherty* v. *Fluherty,* 54 W. Va. 407, 46 S. E. 199; *White* v. *Bailey,* 65 W. Va. 573, 64 S. E. 1019; *Cumberledge* v. *Cumberledge,* 72 W. Va. 773, 79 S. E. 1010; *Carter* v. *Reserve Gas Co.,* 84 W. Va. 741, 100 S. E. 738; *Fox* v. *Starbuck,* 117 W. Va. 736, 188 S. E. 116. When a conveyance is cancelled, it is made a nullity as to all who may be parties to the suit in which the cancellation is decreed. Of course, what a court may do in the cancellation of a deed, the parties may do voluntarily.

Where a conveyance so provides, there may be reentry by the grantor, if the grantee violates a condition subsequent, and the grantor, or his heirs or devisees, may maintain ejectment to recover the land conveyed. Code 37-6-19. *Martin* v. *Ohio River R. R. Co.,* 37 W. Va. 349; 16 S. E. 589; *Hukill* v. *Guffey,* 37 W. Va. 425, 16 S. E. 544; *Sands* v. *Holbert,* 93 W. Va. 574, 117 S. E. 896; *Eastern Oil Co.* v. *Engel,* 100 W. Va. 301, 130 S. E. 491.

None of the cases we have cited deal with rights other than those of the grantor in the deed sought to be cancelled, or by whom reentry is sought. There is a strange dearth of authority on the rights of those whose interests are sought to be served by a grantor who conveys his land to provide some character of benefit for his dependents. The question may be said to be one of first

impression in this state. Shall the act of a grantor who conveys his own property to a chosen individual, for the purpose of providing for the support of his wife or other dependents, be held to be an irrevocable parting with the property so conveyed, to the extent necessary to provide such support, even though the grantor has made an error in his selection of the individual to carry out his proposal, or that individual declines to assume the obligation which the conveyance to him entails, and reconveys the property. When the agreement between the grantor and grantee is rescinded, and the property reconveyed, shall the original owner hold the property subject to the charge which his deed may have created. Has he, by his conveyance, mistaken though it may have been, bound himself irrevocably, and deprived himself of all power to correct his error, and all power to so use his estate for the best interest of those under his care. We are loathe to so hold. We shrink from placing such a restriction on the ownership of property, and we do not think the circumstances of this case, or sound principles of law or equity, require us to do so.

The reason for the provision made in the two deeds for Elmer Ford and John Ford does not appear. No doubt the grantor therein had good grounds for his action. Neither of the two sons appears to have been consulted, nor to have contributed anything to the consideration for the conveyances. What was done was the gratuitous act of the father in conveying property in which his sons had no interest, other than an expectancy, and that expectancy was restored to them when the land in question was reconveyed. On the other hand, the grantees made no agreement with anyone other than the grantor. This being true, why could not the parties who made the agreement, furnished the consideration therefor, and assumed all of the obligations thereof, make another agreement to rescind? True, if there had been no rescission prior to the death of the grantor, the beneficiaries under the deed could have enforced the obligation of the gran-

tees in equity, but probably not in law, the agreement not being made for the sole benefit of any one of them. But where there is a rescission on the part of those whose properties and undertakings are involved, do any rights survive to donee beneficiaries? We think not. We think the owner of the property used to provide for the support contracted for, the grantor, had the legal right to rescind the contract, and have his property restored to him, free from any provision of the agreement so rescinded, and in its entirety. In our opinion, any benefits provided for the beneficiaries named in such a conveyance, were impliedly subject to the agreement he made, and that, upon its voluntary rescission, he could obtain a reconveyance of his property, free from the claims of those whom the agreement and conveyance were intended to favor. Such right is implied from the very nature and risks of the transaction itself. In a case where there has been a reconveyance, the grantor should be given the same status as that of a person who has made a will, and then revoked it; and this notwithstanding the rule that a will does not become effective until the death of the testator. The owner of property should have the same freedom to deal with his property, in the matter of making provision for his dependents, by deed as by will and, with the consent of those with whom he contracts, terminate any agreement he makes without the consent of those who might have rights under such agreement had it not been terminated. To hold otherwise would be to discourage all efforts on the part of a married person to make special provisions for his or her spouse, or parents to provide for their dependents. In many cases parents attempt to provide for infants of tender years, or for stricken or mentally incompetent children. They select certain persons to perform the financial and personal tasks necessary to carry their purpose into effect. Sometimes mistakes are made or conditions arise making it clear that the original purpose will not be consumated. In such a case is the parent helpless? Is he

irrevocably bound by what he has done? If bound, no court would be justified in surrendering the rights of an infant or incompetent, and the result would be that the parent could do nothing, and would simply have to wait until death called him, and then have his conveyance made binding as against his estate, his heirs, and his creditors. It is unthinkable that the law will compel such a result. We say again that where an absolute, clear and irrevocable trust, or some status which is the equivalent thereof, is set up, it must stand; but we do not think the deeds before us create such a trust, or any trust, or its equivalent, and, therefore, we are not bound by the rules which would control in a case where such a status has been created.

But it may be said that the wife parted with her dower right. True. But that right was a mere *inchoate* right which might never accrue, and the reconveyance restored the full right she conveyed. She then stood in precisely the same position, with reference to her rights in her husband's estate, as she occupied prior to the original conveyance. There is no prejudice to her, unless it be said that the provisions made for her support are more valuable than her accrued dower right. In some cases this might be true, and in other not, depending on the extent and character of the estate. Are we to hold that the possibility, or even probability, that she may be prejudiced by the voluntary rescission, shall outweigh the rights of the owner of property to control its uses and disposition, so long as the dower rights therein which the law gives the wife are not violated. In such a case we think the owner's rights are dominant; and while there is a difference between the rights and expectancies of a child and wife, we do not think they are of sufficient importance to require a different application of the law to the two situations.

On the whole, we are of the opinion that the reconveyance of the two tracts of one hundred fifty-four acres and forty-four acres and sixty-five poles, operated to re-

store to R. H. Ford the title to said lands, free and clear of any rights which the wife, Dora Ford, and the two sons, Elmer Ford and John Ford, may have had to support out of said lands, had no reconveyance been made; and that said lands are subject to partition, with due regard to the dower right of Dora Ford therein.

In this view of the case the decree of the court below was erroneous, and should have been set aside. Had that course been taken, the plaintiff would have had a right to file an amended bill bringing into the suit the question of whether there should have been a reconveyance of the one hundred forty-eight acre tract. Obviously, if there should be a reconveyance of that tract it will, likewise, be subject to partition, and the wife will be entitled to dower therein. If on full hearing it is determined that there shall be no reconveyance thereof, the rights of Dora Ford are to support therefrom, and not dower. She cannot have both.

In no aspect of the case can it be held that Dora Ford took a life estate in the two tracts reconveyed. At the most, her right was to support only. That right does not rise to the dignity of a life estate. A life estate would defeat any right to partition during the existence of the life tenancy, for the right to possession is the test of the right to partition. *Merritt* v. *Hughes,* 36 W. Va. 356, 15 S. E. 56; *Croston* v. *Male,* 56 W. Va. 205, 49 S. E. 136; *Brown* v. *Brown,* 67 W. Va. 251, 67 S. E. 596. But holding, as we do, that Dora Ford is only entitled to dower in the lands of which her husband died seized, her right to dower places no impediment in the path of a partition, although requiring that her dower be assigned to her, and the partition made subject thereto.

The decree of the Circuit Court of Summers County is reversed, and the cause remanded for such further proceedings, not inconsistent with this opinion, as the parties may be advised to take.

*Reversed and remanded.*

KENNA, JUDGE, dissenting:

Believing that a restatement of how the legal questions submitted for decision arose in the lower court will clarify my view of the case, I shall first state my understanding of how the issues were raised, beginning with the allegations of the bill of complaint.

This proceeding was instituted by Irene Cales for the purpose of having partitioned among the eight heirs at law of R. H. Ford two contiguous tracts of land of which he died seized and possessed, one containing one hundred and fifty-four acres and the other forty-four acres and sixty-five poles, both having been conveyed to R. H. Ford by Mark Addison Ford and wife by deed dated the third day of August, 1939, and recorded in the office of the Clerk of the County Court of Summers County in Deed Book 71 at page 349, and for the purpose of having assigned to Dora Ford, widow of R. H. Ford, her vested estate of dower in the land described in the bill of complaint.

Dora Ford, widow, and John Ford and Elmer Ford, both sons of decedent, filed their joint and several answers in which they admit practically all of the allegations of the bill of complaint, but go further and allege in substance that by deed dated July 21, 1939, R. H. Ford conveyed the two tracts of land described in the bill to Mark Addison Ford, in which conveyance the right to live upon the land conveyed was reserved, and a right to support and maintenance for life was erected in favor of the grantors, R. H. Ford and Dora Ford, his wife, and also in favor of Elmer Ford and John Ford, two sons. Respondents aver that their right to support and maintenance out of the tracts of land described in the bill has never been extinguished nor disposed of by them and that in addition they have the right to live thereon. They, therefore, resist partition, contending that their right to support and maintenance is chargeable upon the entire boundary operated as a whole, and that their right to live upon the

boundary as a whole of necessity involves and carries with it the right of possession.

Thereafter Irene Cales filed a special replication, the substance of which is to allege that the two deeds dated the 21st day of July, 1939, between R. H. Ford and wife, parties of the first part, Mark Addison Ford, party of the second part, and Elmer Ford and John Ford, parties of the third part, are now void and of no effect because based upon no consideration, and because they attempt to create an estate not recognized at law and are entirely too uncertain to be so recognized. It is to be noted that this replication of necessity attacks the validity of R. H. Ford's title to the land of which Irene Cales in her bill of complaint alleges he died seized and possessed, the bill containing allegations to the effect that both tracts sought to be partitioned were conveyed to decedent by Mark Addison Ford. If Mark Addison Ford had no title, as the replication charges, he could not convey title to decedent, as the bill of complaint alleges.

On the twenty-third day of September, 1941, an agreed order was entered submitting the cause for decision upon the bill of complaint, the answer of Dora Ford, John Ford and Elmer Ford seeking affirmative relief, and the special replication of Irene Cales.

On May 12, 1942, a final decree was entered in effect adjudging that the rights and interests of the defendants Dora Ford, John Ford and Elmer Ford as set up in the deed dated the twenty-first day of July, 1939, between R. H. Ford and Dora Ford, his wife, parties of the first part, Mark Addison Ford, party of the second part, and Elmer and John Ford, parties of the third part, were enforceable and "that the said deed vests a life estate in said Dora Ford, and after said life estate, a maintenance and support and use in a tract of one hundred and fifty-four acres, and a tract of forty-four acres and sixty-five poles for and during the natural life of said Elmer and John Ford, together with their right to live thereon and be supported off of the same for and during their natural

lives, and that said right shall be protected in the settlement of the estate of said R. H. Ford, deceased." The decree further holds that after the expiration of the life estate in Dora, John and Elmer Ford the remainder vests in fee in the heirs at law of R. H. Ford. The clerk is ordered to "omit" the case from the docket.

This is the decree from which this appeal was granted and to which the assignments of error relate. The assignments being four in number read as follows: "First: In denying the plaintiff the relief prayed for; second: In holding that the deeds mentioned in the answer were valid; third: In holding that the deeds were testamentary papers and valid; fourth: In refusing to partition and sell said real estate."

It seems plain to my mind that all but the first assignment may be ignored: the second, for the reason that the bill of complaint bases the decedent's title of the land the plaintiff seeks to partition upon a deed from Mark Addison Ford dated the third day of August, 1939, and the deeds attacked by the plaintiff in her replication, and charged to be void are the two deeds dated the twenty-first day of July, 1939, conveying to Mark Addison Ford, subject to the charge for support and maintenance, the identical tracts of one hundred and fifty-four acres and forty-four acres and sixty-five poles that the bill charges he later conveyed to R. H. Ford. Consequently, if the deeds from R. H. Ford by which Mark Addison Ford acquired title are cancelled and set aside, then the later deed from Mark Addison Ford to R. H. Ford, the title upon which the bill of complaint bases the relief prayed for, also fails. The only way by which this contradictory position can be avoided is to suppose that Mark Addison Ford claimed the boundaries in dispute under more than one source of title. This we believe is an hypothetical assumption not warranted by the state of this record. The third assignment is entirely without support and there is no showing that the trial chancellor either expressly, or impliedly, held that the deeds from R. H. Ford to

Mark Addison Ford were testamentary in their nature. Since they contained provisions charging the land granted with the support and maintenance during his lifetime of R. H. Ford, and for that reason the purpose to put them into effect upon delivery appears, it is difficult to see how it could be contended that their nature was testamentary. Recollecting that this is a proceeding to partition real estate, it is hard to perceive how the fourth assignment of error might be considered because it complains that it was not decreed "to partition and sell" the land in question. Reading the fourth assignment in the disjunctive instead of the conjunctive, discloses that it is merely a repetition of the first assignment, therefore, I so consider it.

Disregarding all of what might be considered technical inconsistencies and, for the sake of expediency, dealing with the plaintiff's right to a decree either partitioning the land described in the bill of complaint or ordering it sold and the proceeds distributed among the lawful claimants, I am of the opinion that the answer of Dora Ford, John Ford and Elmer Ford defeats that right as shown by the allegations of the bill of complaint. A proceeding in chancery to partition land is based upon the right to possession and though the proceeding has been expanded by Code, 37-4-1, to include controversies concerning title, this Court has construed the statute as confining its terms of enlargement to conflicting claims under the title upon which the right to partition is based. See the discussions in *Jones* v. *Comer,* 123 W. Va. 129, 137, 13 S. E. 2d 578. This case as submitted to the trial chancellor rests upon a controversy concerning the immediate right to possession of the land described in the bill of complaint. I believe that under the allegations of the answer just referred to the right to immediate possession rests in Dora Ford, John Ford and Elmer Ford for the following reasons.

By the two deeds dated July 21, 1939, R. H. Ford and Dora Ford, his wife, conveyed the property to Mark

Addison Ford and in each deed charged the property with the support and maintenance, together with the right to live thereon, of himself and wife and Elmer Ford and John Ford, two of their sons. R. H. Ford is now dead and these two deeds, according to the record showing at the time the cause was submitted to the trial chancellor for decision, are the only expression of his purpose, intention and wish concerning the final disposition of his land. His grantee, Mark Addison Ford, is charged with knowledge of the contents of the deeds to him which took effect as valid and binding contracts at the moment the tendered delivery was voluntarily accepted by the grantee, the beneficiaries being R. H. Ford, Dora Ford, John Ford and Elmer Ford all of whom acquired a contractual right.

The grantee can decline delivery of a deed. Not doing so, he is bound. The contention that there was no valid consideration to sustain the two conveyances is easily disposed of by simply calling attention to the fact that Mark Addison Ford in accepting the deed became bound to the extent that caused him quickly to reconvey, apparently under the impression that returning the land would work complete relief. Of course, there being a consideration between the grantor and the grantee, it is unnecessary to show that a consideration moved from each of the beneficiaries under the deeds' provisions.

Overlooking the somewhat glaring inconsistency in the plaintiff's praying in her replication that these two deeds be cancelled and annulled, while in her bill of complaint she seeks partition under a paper title in the chain of which they both appear, I believe it can be asserted with confidence that the reconveyance did not have the effect of a cancellation. I do not agree with the statement contained in the majority opinion that what a court may do in the cancellation of a deed, the parties may do voluntarily. See *Ferguson* v. *Bond,* 39 W. Va. 561, 20 S. E. 591; *Hensley* v. *Swann,* 93 W. Va. 49, 115 S. E. 864. Of course there is no question that the interested parties *sui juris*

can overcome and by their own act counteract the effect of any binding understanding. But it lies within the power of a court of chancery alone to completely obliterate as an absolute nullity a deed or other binding contract. However, even under the viewpoint of the majority here all the parties in interest did not act. Only R. H. Ford accepted a reconveyance from Mark Addison Ford, leaving the interests of Dora, John and Elmer Ford undisturbed. To assert that they had no interests to my mind is plainly not maintainable. We then come to consider the nature of that interest and although that question in general is quite confused by the decided cases in this country, (see 76 A. L. R. 749) in my opinion it is fairly clearly stated and settled in West Virginia.

In the case of *Johnson* v. *Billups,* 23 W. Va. 685, this Court had under consideration a deed conveying one hundred and twenty-five acres of land "subject, however, to half the support of Hiram W. Johnson and his wife during their natural lives, and which is to be attached to the land as a lien upon the land", Hiram W. Johnson and wife not being parties to the deed in which the quoted provision appeared. Samuel L. Billups was the grantee and concerning the effect of the charge upon the land this Court, through Judge Green, had this to say: "This deed creates an executed trust; and by its terms Samuel L. Billups as trustee was to hold this land upon trust to furnish out of its proceeds half the support of Hiram W. Johnson and his wife during their natural lives." Green then proceeds to discuss the question of the *cestui que trust* not being parties to the instrument by which the trust is erected and the indefiniteness of a provision for support and maintenance, both being questioned as here.

The *Billups* case is to be clearly distinguished from *Carter et al.* v. *Reserve Gas Company et al.,* 84 W. Va. 741, 100 S. E. 738, in which a similar provision was held to create a condition subsequent with the right to reenter for non-performance necessarily vested in the grantor, a party to the deed, a reconveyance from the grantee being

held to constitute a rescission. See also *White* v. *Bailey*, 65 W. Va. 573, 64 S. E. 1019, 23 L. R. A. (N. S.) 232, and the dissent of Judge Brannon. Here the beneficiaries are not parties, could retain no right of reentry and consequently no condition subsequent could be enforced by them.

Viewing the conveyances now before us as creating an executed trust and Dora Ford, John Ford and Elmer Ford as *cestuis,* or beneficiaries, the question then arises as to the effect of the trust property being reconveyed to the trustor or creator of the trust. For a rather full discussion of this question see the case of *Ewing* v. *Jones,* 130 Ind. 247, 29 N. E. 1057, 15 L. R. A. 75 and the footnotes appended to the last reference and for a general text treatment see 26 R. C. L. 1207 and the cases cited in the footnote. It will be found by reference to the above citations that the overwhelming weight of authority is to the effect that, without the consent of the beneficiaries, the equitable interests created by a trust are irrevocable, unless the power of revocation has been retained by the grantor in the trust instrument. By doing so if the party creating the trust chooses he can control the execution and life of the trust arbitrarily. See the annotations in 91 A. L. R. 104.

In the light of the foregoing it is my opinion that the instruments now before the Court under our West Virginia rule created an executed trust that a reconveyance to the trustor by the trustee, or any act not participated in by the beneficiaries would not set aside nor revoke, and that the final decree of the trial chancellor subject to a correction to be dealt with hereafter should be affirmed. There can be no question but that the supervision of trusts by courts of chancery makes them quickly responsive instrumentalities.

We come now to consider the effect of the order entered in this cause on the twenty-fifth day of May, 1942, thirteen days after the entry of the final decree. That order reads as follows:

"This 25th, day of May, 1942, came Irene Cales, in person and by her counsel, J. Raymond Gordon, as well as the defendants herein, in person, and by their counsel; and thereupon the plaintiff moves the court to set aside the decree entered herein on the 12th day of May, 1940; and showed to the Court that the case was improperly developed, and that important phases of it were not called to the Court's attention; and the Court, after hearing the argument of Plaintiff's attorney, and the defendants and considering the matters of law arising on said motion, the Court overruled the motion to set aside said decree. Whereupon the plaintiff tendered her amended bill of complaint and asked leave to file same. The Court having seen and inspected the same, refused to file the same, but ordered the same lodged with the papers herein, and is marked for identification 'Amended bill of Complaint'."

It will be noted that it includes two separate and distinct steps that the plaintiff desired to have taken, first, to have the final decree set aside because "the case was improperly developed, and that important phases of it were not called to the Court's attention;" and second, upon the Court's overruling the motion to set aside the decree, plaintiff tendered and asked leave to file her amended bill of complaint, which was refused. It will be observed that the motion to set aside the final decree did not include as an assigned reason the fact that the decree mentions but one deed made by R. H. Ford and wife to Mark Addison Ford, although it refers to both tracts that were conveyed by separate deeds between the same parties. The plaintiff does not attempt to proceed by bill of review.

As to the motion to set aside the final decree the trial chancellor of course is clothed with a very broad discretion, and since the order states its ground in general terms only, specifying nothing, I think no lack of discretion is shown. That fact, coupled with the fact that the cause was finally submitted September 23, 1941, and the final

decree not entered until May 12, 1942, forces the con-
clusion that it was adequately considered. I am of the
opinion that there was no error in the trial chancellor's
refusal.

Conceding that there might be error involved in the
rejection of an amended bill of complaint after final de-
cree and looking upon the two conveyances in question
from the broad general attitude of the majority opinion,
I still perceive nothing in the amended bill warranting
the conclusion that its consideration would result in
more substantial equity to the parties concerned. It in-
troduces a third tract of one hundred and forty acres
and alleges that the three conveyances were made pur-
suant to an agreement, evidently oral, between the
grantor and the grantee providing for the support and
maintenance of R. H. Ford and wife; that R. H. Ford
being old and of feeble mind soon learned that the grantee
did not intend to support and maintain him and his wife
and on the third day of August, 1939, twelve days after
the conveyances were made in consideration of support
and maintenance, he secured a reconveyance from Mark
Addison Ford that he, R. H. Ford, believed to include the
three tracts that he had conveyed to Mark Addison Ford.
The amended bill of complaint goes on and alleges that
R. H. Ford believed the agreement for his support and
maintenance had been entirely invalidated by the recon-
veyance and circumstances tending to show that Mark
Addison Ford received advances from his father and
nevertheless allowed the funeral expenses to be paid by
his father's estate. So far as any interest of R. H. Ford or
his right to support and maintenance is concerned, those
questions are now moot. R. H. Ford is dead. It may be
conceded that as to his individual rights his acceptance of
the conveyance of two tracts from Mark Addison Ford
constituted a rescission so far as the land conveyed was
concerned. He retained whatever interest he had in the
third tract of one hundred and forty acres, title to which
did not revest in him. As to cancelling the deeds signed

and acknowledged by R. H. Ford, in which the right to support and maintenance was provided, on the theory that ignoring them carries out the purpose of R. H. Ford, the suggestion approaches a contradiction in terms. I see no reason to permit the plaintiff by amended bill to rest her cause upon equities militating to her advantage which the trial chancellor has already held do not exist. An affirmance is not precluded by the discussion in the majority opinion of a reversal resulting in arriving at and carrying out the intention of R. H. Ford. R. H. Ford cannot now speak for himself. He did that when he executed and delivered the three deeds providing for the support and maintenance of himself, Dora Ford, John Ford and Elmer Ford and making that support a first charge upon his property, to have preference over the division of that property among his heirs at law. His intention should be discovered from his deeds: not from prior or contemporaneous oral understandings. The plaintiff's attitude was in the beginning, and still is, that the land should be equally divided among his eight heirs at law, free from the charge upon it for the support and maintenance of his widow and two sons. I do not believe that that conclusion is based upon sound reasoning nor do I believe that it accords with the only clearly expressed intention of R. H. Ford that is, or could be, now available.

While I am of opinion that the decree of May 12, 1942, should not be affirmed due to an obvious mistake appearing upon its face, I do not think it should be reversed upon any of the assigned grounds of error. I would therefore remand the cause to the Circuit Court of Summers County with direction to correct the decree so that its finding will include both deeds executed on the 21st day of July, 1939, by R. H. Ford and wife, and will correctly decide the estates conveyed by each and to whom. There being no right to immediate possession in the plaintiff, the cause should then be dropped from the docket at her cost.